IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NIKKI PARHAM, individually and on behalf of her minor child, B.M., ) ) ) | |
| Plaintiff, ) | Case No. 1:18-cv-04678 |
| ) | |
| vs. ) | Honorable Charles R. Norgle, Sr. |
| ) | |
| LAKEVIEW LOAN SERVICING, LLC and CENLAR FSB, ) ) | |
| ) | |
| Defendants. ) | |

## ANSWER, AFFIRMATIVE DEFENSES AND JURY DEMAND TO THE COMPLAINT

*NOW COMES* Defendants, Lakeview Loan Servicing, LLC ("Lakeview") and Cenlar FSB ("Cenlar"), through their undersigned counsel, and for their Answer and Affirmative Defenses to Plaintiff's Complaint, states and alleges, as follows:

### NATURE OF THE ACTION

1.      Plaintiffs bring this action seeking redress for breach of contract, trespass, violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq., violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692, intrusion upon seclusion, and intentional infliction of emotional distress.

**ANSWER:    Answering paragraph 1 of the Complaint, deny that they violated the law in any way.  Answering further, lack knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 1.**

2.      All of Plaintiffs' claims stem from Defendants' illegal debt collection activity relating to Nikki's home mortgage loan. Defendants illegally broke into Nikki's home without authorization and damaged Nikki's home.

**ANSWER:    Answering paragraph 2 of the Complaint, deny the allegations contained therein.**

**JURISDICTION AND VENUE**

3.    Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

**ANSWER:    Answering paragraph 3 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

4.    This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because this action involves citizens of different states and the amount in controversy exceeds $75,000.00.

**ANSWER:    Answering paragraph 4 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

5.    The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367.

**ANSWER:    Answering paragraph 5 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

6.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Plaintiffs reside in this judicial district, Defendants conduct business in this judicial district, and all of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

**ANSWER:    Answering paragraph 6 of the Complaint, admit only that from time to time they do conduct business within this judicial district.  Answering further, lack knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 6.**

302569740v1 1011352

## PARTIES

7.    Plaintiffs are natural persons that reside at a property commonly known as 7523 South Ridgeland Avenue, Chicago, IL ("subject property").

**ANSWER:    Answering paragraph 7 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

8.    Nikki is a single mother of two children, whom at all times relevant was employed at Chicago Commons, a not-for-profit social organization that serves under-resourced communities throughout the city of Chicago.

**ANSWER:    Answering paragraph 8 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

9.    B.M. is Nikki's 14 year old son that suffers from a neurological disorder known as epilepsy.

**ANSWER:    Answering paragraph 9 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

10.    The subject property serves as Nikki's family's home.

**ANSWER:    Answering paragraph 10 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

11.    Lakeview Loan Servicing, LLC ("Lakeview") is a mortgage company based out of Coral Gables, Florida. Lakeview is in the business of extending mortgage loans to consumers across the United States, including consumers in Illinois. Lakeview is also in the business of acquiring and servicing mortgage loans that were originated by a third party. Lakeview acquires mortgage loans and services mortgage loans owed by Illinois consumers.  Lakeview does business in Illinois.

302569740v1 1011352

**ANSWER:** **Answering paragraph 11 of the Complaint, Lakeview admits only that it has offices located in Coral Gables, Florida, that it is in the business of mortgage financing and that it is licensed to do business in the State of Illinois. Answering further, Lakview lacks knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 11. Answering further, Cenlar lacks knowledge and/or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11.**

12.     Cenlar FSB ("Cenlar") is a mortgage loan subservicing company with headquarters located in Ewing, New Jersey. Cenlar services and subservices mortgage loans for third party loan owners. Cenlar services and subservices mortgage loans owed by Illinois consumers. Cenlar does business in Illinois.

**ANSWER:** **Answering paragraph 12 of the Complaint, Cenlar admits only that it is a Federally Chartered Savings Bank, and has offices in Ewing, New Jersey, that it is in the business of mortgage subservicing and that it is authorized to do business in the State of Illinois. Answering further, Cenlar lacks knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 12. Answering further, Lakeview lacks knowledge and/or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12.**

### FACTS SUPPORTING CAUSES OF ACTION

13.     On May 29, 2014, Nikki obtained a mortgage loan ("subject loan") in the amount of $157,003.00 from Sun West Mortgage Company, Inc. ("Sun West"), secured by the subject property.

**ANSWER:** **Answering paragraph 13 of the Complaint, lack knowledge and/or**

4

information sufficient to form a belief as to the truth of the allegations contained therein.

14.     B.M. was not a party to the subject loan.

**ANSWER:     Answering paragraph 14 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

15.     Pursuant to the terms of the loan, Nikki was obligated to make monthly principal and interest payments in the initial amount of $772.36 for 30 years.

**ANSWER:     Answering paragraph 15 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

16.     Due to a decrease in monthly income, Nikki defaulted on the subject loan.

**ANSWER:     Answering paragraph 16 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

17.     In late 2015, after the subject loan was in default, Lakeview acquired the subject loan from Sun West.

**ANSWER:     Answering paragraph 17 of the Complaint, admit only that at some point Lakeview became the servicer on a mortgage involving an individual named Nikki Parham, and at a point thereafter, Cenlar began subservicing the same mortgage.     Answering further, lack knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 17.**

18.     As soon as Lakeview acquired the subject loan, it assigned servicing rights for the subject loan to Cenlar.

**ANSWER:     Answering paragraph 18 of the Complaint, admit only that at some point Lakeview became the servicer on a mortgage involving an individual named Nikki Parham, and at a point thereafter, Cenlar began subservicing the same mortgage.     Answering**

5

further, lack knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 18.

19.     Accordingly, Cenlar became the face of the subject loan and was responsible for the day-to-day management and administration of the subject loan.

**ANSWER:     Answering paragraph 19 of the Complaint, admit only that at some point Lakeview became the servicer on a mortgage involving an individual named Nikki Parham, and at a point thereafter, Cenlar began subservicing the same mortgage.     Answering further, lack knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 19.**

20.     In December 2016, Nikki submitted a complete loan modification application to Cenlar. The loan modification, if granted, would modify the repayment terms of the subject loan and deem Nikki current on the subject loan.

**ANSWER:     Answering paragraph 20 the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

21.     Despite submitting a complete loan modification application, Cenlar never responded to Nikki's loan modification application.

**ANSWER:     Answering paragraph 21 the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein; however, to the extent a loan modification application was submitted, Cenlar expressly denies any wrongdoing with respect to the loan modification application.**

22.     On January 13, 2016, Lakeview (as owner of the subject loan) filed a foreclosure complaint in Circuit Court of Cook County seeking to foreclosure on the subject property, Case No. 2016-CH-00476 ("foreclosure proceeding").

**ANSWER: Answering paragraph 22 of the Complaint, affirmatively allege that the documents Plaintiff filed in the aforementioned legal proceeding speak for themselves and deny all allegations of fact that are inconsistent with a plain meaning reading of the documents Plaintiff filed in that matter.**

23. On November 30, 2016, in an effort to save her family's home, Nikki filed a Chapter 13 bankruptcy in the Bankruptcy Court for the Northern District of Illinois, Case No. 16-37792.

**ANSWER: Answering paragraph 23 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

24. By operation of law, Nikki's bankruptcy filing stayed the foreclosure proceeding. See 11 U.S.C. §362.

**ANSWER: Answering paragraph 24 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

25. In February 2017, B.M. underwent brain surgery to treat the subclinical seizures that stem from his epilepsy disorder.

**ANSWER: Answering paragraph 25 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

26. On March 9, 2017, Nikki filed a Chapter 13 Plan which proposed a repayment plan that would, in pertinent part, (1) recommence contractual monthly payments on the subject loan; and (2) cure the default on the subject loan over 60 months.

**ANSWER: Answering paragraph 26 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

27. On April3, 2017, the Bankruptcy Court confirmed Nikki's Chapter 13 Plan

7

("Confirmed Plan"), thus binding Lakeview and Cenlar to the terms of the Confirmed Plan.

**ANSWER:     Answering paragraph 27 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

28.     Due to Nikki's dire financial circumstances, Nikki fell behind on her monthly payments as prescribed by the Confirmed Plan.

**ANSWER:     Answering paragraph 28 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

29.     As a result, on June 5, 2017, Lakeview (as owner of the subject loan) obtained authorization from the Bankruptcy Court to continue the foreclosure proceeding.

**ANSWER:     Answering paragraph 29 of the Complaint, affirmatively allege that the Orders entered by the Court in the aforementioned legal proceeding speak for themselves and deny all allegations of fact that are inconsistent with a plain meaning reading of the Orders the Court entered in that matter.**

30.     The foreclosure proceeding progressed and a sale of the subject property was scheduled for July 28, 2017.

**ANSWER:     Answering paragraph 30 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

31.     Prior to the sale date, Cenlar sent Nikki a loan modification application.

**ANSWER:     Answering paragraph 31 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

32.     On June 19, 2017, in an effort to save her family's home, Nikki submitted a complete loan modification application to Cenlar.

**ANSWER:     Answering paragraph 32 of the Complaint, lack knowledge and/or**

8

**information sufficient to form a belief as to the truth of the allegations contained therein.**

33.     On July 7, 2017, Cenlar sent agents ("Cenlar's agents") to the subject property while Nikki was at work and while B.M. was home alone.

**ANSWER:     Answering paragraph 33 of the Complaint, affirmatively alleges that on or about July 7, 2017, Five Brothers, an independent property preservation company, was sent to investigate whether the property at 7523 S. Ridgeland Avenue in Chicago, IL 60649 was occupied and, if it was not, to secure it.  Answering further, lack knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 33.**

34.     Upon arrival to the doorstep to the subject property, Cenlar's agents began banging loudly on the front door.

**ANSWER:     Answering paragraph 34 of the Complaint, affirmatively alleges that on or about July 7, 2017, Five Brothers, an independent property preservation company, was sent to investigate whether the property at 7523 S. Ridgeland Avenue in Chicago, IL 60649 was occupied, and, if it was not, to secure it.  Answering further, lack knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 34.**

35.     In response to the banging, B.M., not expecting any company, went to a nearby window and observed an individual banging on the front door and multiple individuals congregating by the front door and lawn.

**ANSWER:     Answering paragraph 35 of the Complaint, affirmatively alleges that on or about July 7, 2017, Five Brothers, an independent property preservation company, was sent to investigate whether the property at 7523 S. Ridgeland Avenue in Chicago, IL 60649**

302569740v1 1011352

was occupied, and, if it was not, to secure it. **Answering further, lack knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 35.**

36.     B.M., fearing for his safety, did not answer the door or otherwise try to communicate with Cenlar's agents as he did not recognize them and did not know why they were at his home.

**ANSWER:    Answering paragraph 36 of the Complaint, deny that any individual who may have been inside the property located at 7523 S. Ridgeland Avenue in Chicago, IL 60649 was in fear for his/her safety.    Answering further, lack knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 36.**

37.     Shortly thereafter, the banging stopped and B.M. thought that Cenlar's agents left the subject property.

**ANSWER:    Answering paragraph 37 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

38.     A couple of minutes later, B.M. heard loud bangs coming from the back door of the subject property.

**ANSWER:    Answering paragraph 38 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

39.     B.M., fearing for his safety, did not open the back door and believed that Cenlars' agents would leave if nobody answered the back door.

**ANSWER:    Answering paragraph 39 of the Complaint, deny that any individual who may have been inside the property located at 7523 S. Ridgeland Avenue in Chicago, IL**

10

**60649 was in fear for his/her safety.  Answering further, lack knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 39.**

40.     Shortly thereafter, B.M. started hearing loud booms coming from the back door.

**ANSWER:     Answering paragraph 40 of the Complaint, deny the allegations contained therein.**

41.     At this point, B.M. believed that Cenlar's agents were trying to break down the back door.

**ANSWER:     Answering paragraph 41 of the Complaint, deny the allegations contained therein.**

42.     Fearing for his safety, B.M. ran to the basement of the subject property and hid in the furnace closet.

**ANSWER:     Answering paragraph 42 of the Complaint, deny the allegations contained therein.**

43.     Shortly thereafter, B.M. heard a loud crash, followed by the sound of footsteps  on the main level of the subject property.

**ANSWER:     Answering paragraph 43 of the Complaint, deny the allegations contained therein.**

44.     In a state of panic and fright, B.M. went to a computer near the furnace closet and sent an email to Nikki stating that someone broke into the house and urged Nikki to come home.

**ANSWER:     Answering paragraph 44 of the Complaint, deny the allegations contained therein.**

45.     At that point, B.M. started hearing the voices of Cenlar's agents as they walked

302569740v1 1011352

around the house.

**ANSWER:** **Answering paragraph 45 of the Complaint, deny the allegations contained therein.**

46.     At no point after entry into the subject property did Cenlar's agents identify themselves.

**ANSWER:** **Answering paragraph 46 of the Complaint, deny the allegations contained therein.**

47.     Shortly thereafter, Cenlar's agents came to the basement where B.M. was hiding in the furnace closet and began shining flashlights all over the basement.

**ANSWER:** **Answering paragraph 47 of the Complaint, deny the allegations contained therein.**

48.     At that point, B.M. believed that Cenlar's agents were looking for him and were going to kill him.

**ANSWER:** **Answering paragraph 48 of the Complaint, deny the allegations contained therein.**

49.     Cenlar's agents then approached the furnace closet where B.M. was hiding.

**ANSWER:** **Answering paragraph 49 of the Complaint, deny the allegations contained therein.**

50.     In a state of terror, B.M. hid as far back behind the furnace as possible.

**ANSWER:** **Answering paragraph 50 of the Complaint, deny the allegations contained therein.**

51.     Cenlar's agents opened the furnace closet and flashed their flashlights into the furnace closet.

302569740v1 1011352

**ANSWER:** **Answering paragraph 51 of the Complaint, deny the allegations contained therein.**

52.     Cenlar's agents did not see B.M. and left the basement.

**ANSWER:** **Answering paragraph 52 of the Complaint, deny the allegations contained therein.**

53.     B.M. hid in the furnace closet until he can no longer hear any noises in the subject property. After B.M. believed that he was safe, he finally came out of hiding and went upstairs.

**ANSWER:** **Answering paragraph 53 of the Complaint, deny the allegations contained therein.**

54.     B.M. looked outside of a window on the main level of the subject property and observed his neighbor talking to police officers right outside the front door of the subject property.

**ANSWER:** **Answering paragraph 54 of the Complaint, deny the allegations contained therein.**

55.     B.M. could not open the front door so he told to the police officers to meet him at the back door of the subject property.

**ANSWER:** **Answering paragraph 55 of the Complaint, deny the allegations contained therein.**

56.     When B.M. got to the back door, he discovered that Cenlar's agents had forcibly broke into the subject property by breaking the back door and that Cenlar's agents had placed a lock on the back door.

**ANSWER:** **Answering paragraph 56 of the Complaint, deny the allegations contained**

13

**therein.**

57. Shortly thereafter, Nikki arrived at the subject property and discovered the following: (1) police at her home; (2) B.M. in a state of extreme emotional distress; (3) a lock on the back door that restricted Nikki's access to her home; (4) open drawers and cabinets; and (5) a broken back door with screws and door panel on the floor.

**ANSWER: Answering paragraph 57 of the Complaint, deny the allegations contained therein.**

58. Realizing that she could not enter the subject property, Nikki solicited the help of the police officers on site to break the lock that Cenlar's agents placed on the back door.

**ANSWER: Answering paragraph 58 of the Complaint, deny the allegations contained therein.**

59. The police tried to break the lock on the back door but were unable to. Accordingly, Nikki was forced to hire a locksmith to break the lock on the back door so she can access her home.

**ANSWER: Answering paragraph 59 of the Complaint, deny the allegations contained therein.**

60. After obtaining access to her home, Nikki filed a police report for the burglary/forcible entry that was committed by Cenlar's agents.

**ANSWER: Answering paragraph 60 of the Complaint, deny any principal/agent relationship and that there was a burglary/forcible entry related to any actions by Lakeview and/or Cenlar. Answering further, lack knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 60.**

61. Defendants did not leave any message or communication at the subject property

14

notifying Plaintiffs of their identities or the reason they changed the locks, leaving Plaintiffs to wonder if they were in imminent danger of a future break-in.

**ANSWER:** **Answering paragraph 61 of the Complaint, deny the allegations contained therein.**

62. Shortly after the break-in, Nikki called Cenlar to inquire if Cenlar had anything to do with the break-in.

**ANSWER:** **Answering paragraph 62 of the Complaint, Cenlar admits only that on July 10, 2018 an individual named Nikki Parham called Cenlar's offices. Answering further, Cenlar lacks knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 62. Answering further, Lakeview lacks knowledge and/or information sufficient to form a belief as to the truth of the allegations contained in paragraph 62.**

63. In response to Nikki's inquiry, a Cenlar representative acknowledged that Cenlar sent some representatives to the subject property in an effort to determine if the subject property was vacant.

**ANSWER:** **Answering paragraph 63 of the Complaint, Cenlar admits only that on July 10, 2018 an individual named Nikki Parham called Cenlar's offices. Answering further, Cenlar lacks knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 63. Answering further, Lakeview lacks knowledge and/or information sufficient to form a belief as to the truth of the allegations contained in paragraph 63.**

64. Cenlar knew or should have known that the subject property was not vacant because Nikki had recently submitted a loan modification application, which indicated the

15

property was occupied.

**ANSWER: Answering paragraph 64 of the Complaint, deny the allegations contained therein.**

65. Up until the time the Cenlar representative told Nikki that it was Cenlar that sent representatives to the subject property, Plaintiffs did not know who broke into their home.

**ANSWER: Answering paragraph 65 of the Complaint, Cenlar admits only that on July 10, 2018 an individual named Nikki Parham called Cenlar's offices. Answering further, Cenlar lacks knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 65. Answering further, Lakeview lacks knowledge and/or information sufficient to form a belief as to the truth of the allegations contained in paragraph 65.**

66. At all times relevant, Nikki was the legal owner of the subject property.

**ANSWER: Answering paragraph 66 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

67. At all times relevant, the subject property served as Plaintiffs' principal residence and family home.

**ANSWER: Answering paragraph 67 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

68. At all times relevant, the subject property was fully furnished.

**ANSWER: Answering paragraph 68 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

69. At all times relevant, Defendants did not have authority to enter the subject

16

property.

**ANSWER: Answering paragraph 69 of the Complaint, deny the allegations contained therein.**

70. At all times relevant, Defendants did not notify Plaintiffs that it would be sending representatives to the subject property to determine if the subject property was vacant.

**ANSWER: Answering paragraph 70 of the Complaint, affirmatively alleges that a property preservation company had been sent to the property located at 7523 S. Ridgeland Avenue in Chicago, IL 60649 in years previous to 2017 and that, as a result, the individual(s) inside of that property was/were aware of the consequence for nonpayment of the mortgage. Answering further, lack knowledge and/or information sufficient to form a belief as to the remaining allegations contained in paragraph 70.**

71. At all times relevant, Defendants did not have a legal right to enter the subject property.

**ANSWER: Answering paragraph 71 of the Complaint, deny the allegations contained therein.**

72. At all times relevant, Cenlar and its representatives were Lakeview's agent(s) acting at the direction and under the control of Lakeview.

**ANSWER: Answering paragraph 72 of the Complaint, deny the allegations contained therein.**

73. Upon information and belief, Defendants do not have a license to change locks as required by the Illinois Locksmith Act.

**ANSWER: Answering paragraph 73 of the Complaint, deny that they changed any locks. Answering further, lack knowledge and/or information sufficient to form a belief as**

17

**to the truth of the remaining allegations contained in paragraph 73.**

## PLAINTIFFS' DAMAGES

74.    Plaintiffs have suffered significant damages that were proximately caused by Defendants' conduct.

**ANSWER:    Answering paragraph 74 of the Complaint, deny the allegations contained therein.**

75.    As a result of Defendants' conduct, Plaintiffs suffered extreme emotional distress, anxiety, mental anguish, and pain and suffering resulting from (a) the constant fear that their home will be broken into again; and (b) the deprivation of the sense of security and safety in their home.

**ANSWER:    Answering paragraph 75 of the Complaint, deny the allegations contained therein.**

76.    As a result of Defendants' conduct, Plaintiffs lost access to their home for a limited period of time.

**ANSWER:    Answering paragraph 76 of the Complaint, deny the allegations contained therein.**

77.    As a result of Defendants' conduct, Plaintiffs permanently lost the sense of security and safety in their home.

**ANSWER:    Answering paragraph 77 of the Complaint, deny the allegations contained therein.**

78.    As a result of Defendants' conduct, Plaintiffs permanently lost the enjoyment of their home.

302569740v1 1011352

**ANSWER:** **Answering paragraph 78 of the Complaint, deny the allegations contained therein.**

79.     As a result of Defendants' conduct, Plaintiffs permanently lost the comfort of their home.

**ANSWER:** **Answering paragraph 79 of the Complaint, deny the allegations contained therein.**

80.     As a result of Defendants' conduct, Plaintiffs suffered extended loss of sleep resulting from nightmares involving break-ins to their home.

**ANSWER:** **Answering paragraph 80 of the Complaint, deny the allegations contained therein.**

81.     As a result of Defendants' conduct, Plaintiffs' back door was significantly damaged.

**ANSWER:** **Answering paragraph 81 of the Complaint, deny the allegations contained therein.**

82.     As a result of Defendants' conduct, Nikki suffered out of pocket expenses incurred for (1) hiring a locksmith to break the lock on the back door; (2) fixing the damage to the back doors; and (3) purchasing a new lock for the back door.

**ANSWER:** **Answering paragraph 82 of the Complaint, deny the allegations contained therein.**

83.     As a result of Defendants' conduct, Plaintiffs expended significant time and energy fixing the damaged door and replacing the lock on the back door.

**ANSWER:** **Answering paragraph 83 of the Complaint, deny the allegations contained therein.**

302569740v1 1011352

84. As a result of Defendants' conduct, Plaintiffs suffered public humiliation and embarrassment arising from the police presence at their home.

**ANSWER:** **Answering paragraph 84 of the Complaint, deny the allegations contained therein.**

85. As a result of Defendants' conduct, Nikki suffered the loss of income. Specifically, Nikki took 3 days off of work to stay home and comfort B.M. as he was extremely traumatized by the break-in.

**ANSWER:** **Answering paragraph 85 of the Complaint, deny the allegations contained therein.**

### COUNT I-BREACH OF CONTRACT (NIKKI AGAINST LAKESHORE)

86. Plaintiffs restate Paragraphs 1 through 85 as fully stated herein.

**ANSWER:** **Answering paragraph 86 of the Complaint, repeat, reallege and incorporate herein by reference their responses to the preceding paragraphs of the Complaint.**

87. The subject loan is a valid and enforceable contract between Nikki and Sun West and its successors and assigns ("the contract").

**ANSWER:** **Answering paragraph 87 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

88. Lakeview is Sun West's successor and assign, and thus Lakeview is bound by the terms of the contract.

**ANSWER:** **Answering paragraph 88 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

89. Pursuant to the contract, Lakeview "may inspect [the subject property] if the [subject property] is vacant or abandoned or the loan is in default."

20

**ANSWER: Answering paragraph 89 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

90. The contract further states that Lakeview "may take reasonable action to protect and preserve" the subject property if it is vacant or abandoned.

**ANSWER: Answering paragraph 90 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

91. Lakeview breached the contract by breaking into the subject property without Nikki's consent.

**ANSWER: Answering paragraph 91 of the Complaint, deny the allegations contained therein.**

92. Although the contract permits Lakeview to "inspect" the subject property, the contract does not authorize Lakeview or its agents to forcibly break into the subject property.

**ANSWER: Answering paragraph 92 of the Complaint, Lakeview denies that it broke into the property located at 7523 S. Ridgeland Avenue in Chicago, IL 60649. Answering further, Lakeview lacks knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 92. Answering further, Cenlar lacks knowledge and/or information sufficient to form a belief as to the truth of the allegations contained in paragraph 92.**

93. Moreover, Lakeview breached the contract by taking unreasonable action to "protect and preserve" the subject property because the subject property was not vacant or abandoned.

**ANSWER: Answering paragraph 93 of the Complaint, deny the allegations contained therein.**

94.     Moreover, forcibly breaking into the subject property is not "reasonable" by any standard.

**ANSWER:     Answering paragraph 94 of the Complaint, deny the allegations contained therein.**

95.     As pled above, Nikki was severely harmed by Lakeview's breach of the contract and thus is entitled to compensation for her damages.

**ANSWER:     Answering paragraph 95 of the Complaint, deny the allegations contained therein.**

96.     Moreover, Nikki is entitled to punitive damages for Lakeview's breach of the contract because the break in constituted independent and willful torts (trespass, intrusion upon seclusion, and intentional infliction of emotional distress) accompanied by "wantonness" and "oppression." *See Hunter Douglas Metals, Inc. v. Edward C. Mange Trading Co*., 586 F. Supp. 926, 929 (7th Cir. 1984) (finding that where a breach of contract contains allegations sufficient to support both a contract claim and an independent tort, both may stand and punitive damages may be awarded if plaintiff is able to sustain his burden under the tort theory.)

**ANSWER:     Answering paragraph 96 of the Complaint, deny the allegations contained therein, and affirmatively allege that the claim for punitive damages is barred  by the *Moorman* Doctrine, pursuant to *Moorman Manufacturing Co. v. National Tank Co*., 435 N.E.2d 443 (Ill. 1982).**

## COUNT II- TRESPASS TO REAL PROPERTY
### (NIKKI AGAINST LAKESHORE AND CENLAR)

97.     Plaintiffs restate Paragraphs 1 through 85 as fully stated herein.

**ANSWER:     Answering paragraph 97 of the Complaint, repeat, reallege and incorporate herein by reference their responses to the preceding paragraphs of the Complaint.**

22

98.     At all times relevant, Nikki owned the subject property and had a legal right to exclusive possession of the subject property.

**ANSWER:     Answering paragraph 98 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

99.     Defendants had actual knowledge that Nikki owned and occupied the subject property.

**ANSWER:     Answering paragraph 99 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

100.     Without consent or a right to possession, Defendants forcibly entered and assumed dominion and control of the subject property.

**ANSWER:     Answering paragraph 100 of the Complaint, deny the allegations contained therein.**

101.     Without consent or a right to possession, Defendants placed a lock on the back door of the subject property, thus depriving Nikki of access to the subject property.

**ANSWER:     Answering paragraph 101 of the Complaint, deny the allegations contained therein.**

102.     Defendants' forced entry and trespass upon the subject property interfered with Nikki's possession, ownership, use, and enjoyment of the subject property.

**ANSWER:     Answering paragraph 102 of the Complaint, deny the allegations contained therein.**

103.     Upon information and belief, it is Defendants' normal business practice to ignore possessory and ownership rights of homeowners, and to illegally take possession of properties without consent or a court order, in conscious disregard of the rights of homeowners.

23

**ANSWER: Answering paragraph 103 of the Complaint, deny the allegations contained therein.**

104. As pled above, Nikki was severely harmed by Defendants' conduct.

**ANSWER: Answering paragraph 104 of the Complaint, deny the allegations contained therein.**

## COUNT III-VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
## (PLAINTIFFS AGAINST LAKESHOREAND CENLAR)

105. Plaintiffs restate Paragraphs 1 through 85 as fully stated herein.

**ANSWER: Answering paragraph 105 of the Complaint, repeat, reallege and incorporate herein by reference their responses to the preceding paragraphs of the Complaint.**

106. Plaintiffs meet the ICFA definition of "consumer" and "person."

**ANSWER: Answering paragraph 106 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

107. Defendants violated ICFA by employing unfair and deceptive acts and practices against Plaintiffs.

**ANSWER: Answering paragraph 107 of the Complaint, deny the allegations contained therein.**

108. Defendants specialize in mortgage lending, servicing, debt collection, property preservation, and the expedited turnover of real property to satisfy defaulted mortgage debt. These actions occur in the course of conduct involving trade or commerce.

**ANSWER: Answering paragraph 108 of the Complaint, Lakeview admits only that it is in the mortgage lending business. Answering further, Cenlar admits only that it is in the business of mortgage subservicing. Answering further, Lakeview and Cenlar deny the**

24

**remaining allegations in paragraph 108.**

    **a. Unfairness and Deception**

    109.   It was unfair for Defendants to dispossess the Plaintiffs of the subject property without a court order authorizing the same.

**ANSWER:    Answering paragraph 109 of the Complaint, deny the allegations contained therein.**

    110.   It was unfair for Defendants to employ self-help and take possession of the subject property outside the judicial process mandated by the Illinois Mortgage Foreclosure Law ("IMFL") (defining possessory rights and the prohibition against harassment or intimidation to compel occupants to abandon mortgaged property).

**ANSWER:    Answering paragraph 110 of the Complaint, deny the allegations contained therein.**

    111.   It was unfair for the Defendants to lock the Plaintiffs out of their home in an effort to force them to "give up" possession of the subject property.

**ANSWER:    Answering paragraph 111 of the Complaint, deny the allegations contained therein.**

    112.   It was unfair for Defendants to change the lock of the back door of the subject property without having a valid license required by the Illinois Locksmith Act.

**ANSWER:    Answering paragraph 112 of the Complaint, deny the allegations contained therein.**

    113.   It was unfair for Defendants to forcibly enter Plaintiffs' home without legal authorization to do the same.

**ANSWER:    Answering paragraph 113 of the Complaint, deny the allegations contained**

302569740v1 1011352

**therein.**

114.    It was unfair for Defendants to cause damage to the back door of the subject property and not compensate Nikki for the damage caused by Defendants.

**ANSWER:    Answering paragraph 114 of the Complaint, deny the allegations contained therein.**

115.    Defendants' conduct offends public policy as it demonstrates an industry-wide practice of maximizing profits by ignoring the possessory rights of homeowners in violation of the law, expediting the foreclosure process by circumventing the law, and profiting from the expedited sale of real property.

**ANSWER:    Answering paragraph 115 of the Complaint, affirmatively allege that paragraph 115 violates Fed. R. Civ. P. 8, which limits a pleading to include only a short and plain statement of the claim showing that the pleader is entitled to relief.  In the event that paragraph 115 is properly plead, deny the allegations contained therein.**

116.    It was unfair and deceptive for Defendants to mislead Nikki into believing that Lakeview may modify the subject loan when Lakeview had no intent to modify or even consider a modification of the subject loan.

**ANSWER:    Answering paragraph 116 of the Complaint, deny the allegations contained therein.**

117.    Plaintiffs had no choice but to submit to Defendants' conduct. Specifically, Plaintiffs had no control over (I)  the sham loan modification process; (2) the changing of the lock; (3) the destruction to the subject property; and (4) their ability to enter their home after Defendants illegally changed the locks.

**ANSWER:    Answering paragraph 117 of the Complaint, deny the allegations contained**

302569740v1 1011352

**therein.**

118.    It was unfair and deceptive for Defendants to erroneously deem the subject property "vacant" or "abandoned" when Defendants had actual knowledge that the subject property was occupied as  the loan  modification applications submitted by  Nikki expressly stated that  the subject property was occupied.

**ANSWER:    Answering paragraph 118 of the Complaint, deny the allegations contained therein.**

119.    It was unfair and deceptive for Defendants to erroneously deem the property "vacant" or "abandoned" despite the fact that the subject property was conspicuously occupied and well- maintained.

**ANSWER:    Answering paragraph 119 of the Complaint, deny the allegations contained therein.**

120.    Defendants intended that the Plaintiffs would rely on their unfair and deceptive acts; their overall scheme was designed to thwart Nikki's attempt to keep her home and designed to buffalo Nikki into giving up her property without having to go through the foreclosure process.

**ANSWER:    Answering paragraph 120 of the Complaint, deny the allegations contained therein.**

12l.    Nikki did rely on upon Defendants' unfair and deceptive acts by completing the loan modification application that Defendants had no intention of granting.

**ANSWER:    Answering paragraph 121 of the Complaint, deny the allegations contained therein.**

122.    Defendants were hoping that their illegal conduct would ultimately drive the

302569740v1 1011352

Plaintiffs out of their home so Defendants could take possession without having to go through the lengthy foreclosure process. Defendants' objective was to profit from an expedited sale of the subject property.

**ANSWER:**     **Answering paragraph 122 of the Complaint, deny the allegations contained therein.**

123.    Defendants' overall conduct towards Plaintiffs was oppressive and against public policy.

**ANSWER:**     **Answering paragraph 123 of the Complaint, deny the allegations contained therein.**

124.    As pled above, Plaintiffs were severely harmed by Defendants' conduct.

**ANSWER:**     **Answering paragraph 124 of the Complaint, deny the allegations contained therein.**

125.    Defendants' conduct causes substantial injury to consumers generally because:

i.    consumers reasonably expect to be safe and secure in their own property;

ii.    consumers reasonably expect mortgage companies to communicate with them truthfully and accurately regarding the occupancy status of a home or any claims of vacancy or abandonment;

iii.    consumers reasonably expect mortgage companies to evaluate their loan modification applications in good faith;

iv.    consumers reasonably expect companies to follow state and federal law and their own guidelines;

v.    consumers reasonably expect that companies will not take illegal action to expedite a foreclosure and bully consumers from their property;

vi.    consumers reasonably expect companies to make honest efforts to resolve a dispute, instead of misrepresenting facts and ignoring requests and inquiries; and

vii.    consumers reasonably expect mortgage companies to honor and respect laws designed to protect consumers.

**ANSWER:** **Answering paragraph 125 of the Complaint and the subparts of that paragraph, deny the allegations contained therein.**

126. An award of punitive damages is appropriate because Defendants' conduct was outrageous, willful, wanton, showed a reckless disregard for the rights of the Plaintiffs, and was designed to take advantage of a vulnerable family.

**ANSWER:** **Answering paragraph 126 of the Complaint, deny the allegations contained therein.**

<u>COUNT IV- VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT</u>
<u>(PLAINTIFFS AGAINST LAKEVIEW AND CENLAR)</u>

127. Plaintiffs restate Paragraphs 1 through 85 as fully stated herein

**ANSWER:** **Answering paragraph 127 of the Complaint, repeat, reallege and incorporate herein by reference their responses to the preceding paragraphs of the Complaint.**

128. The subject loan is a "debt" as defined by the FDCPA §1692a(5) because the mortgage loan was incurred to finance the purchase of Nikki's principal residence, and thus incurred for "personal, family, or household" purposes.

**ANSWER:** **Answering paragraph 128 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

129. Defendants are a "debt collector" as defined by the FDCPA §1692a(6) because they use instrumentalities of interstate commerce or the mails to collect debts and enforce security interests.

**ANSWER:** **Answering paragraph 129 of the Complaint, deny the allegations contained therein.**

130. Defendants are a "debt collector" as defined by the FDCPA §1692a(6) because

29

their principal business purpose is the collection of debts.

**ANSWER:** **Answering paragraph 130 of the Complaint, deny the allegations contained therein.**

131. Defendants are a "debt collector" as defined by the FDCPA §1692a(6) because they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

**ANSWER:** **Answering paragraph 131 of the Complaint, deny the allegations contained therein.**

132. Defendants are a "debt collector" as defined by the FDCPA §1692a(6) because they are in the business of enforcing security interests.

**ANSWER:** **Answering paragraph 132 of the Complaint, deny the allegations contained therein.**

133. Defendants are a "debt collector" as defined by the FDCPA §1692a(6) because they acquired rights to the subject loan after it was in default.

**ANSWER:** **Answering paragraph 133 of the Complaint, deny the allegations contained therein.**

134. At all times relevant, Defendants were attempting to collect a debt owed by Nikki to Lakeview.

**ANSWER:** **Answering paragraph 134 of the Complaint, lack knowledge and/or information sufficient to form a belief as to the truth of the allegations contained therein.**

**a. Violations of §§1692f(l) and f(6)(A)**

135. In an effort to collect the subject loan, Defendants violated §§1692f(l) and(6)(A) by taking illegal non-judicial action and employing self-help to dispossess the Plaintiffs of the

30

subject property. As stated above, Defendants had no legal or contractual right to forcibly enter the subject property, change the lock, and take possession of the subject property because (1) the foreclosure proceeding was still pending and Defendants did not have a court order that authorized them to take possession of the subject property and (2) it was unnecessary to "preserve" the subject property because the subject property was not "vacant" or "abandoned" and conspicuously in good condition.

**ANSWER:   Answering paragraph 135 of the Complaint, deny the allegations contained therein.**

136.   Defendants evicted and dispossessed Plaintiffs from their home without a valid basis and in violation of state law.

**ANSWER:   Answering paragraph 136 of the Complaint, deny the allegations contained therein.**

137.   As stated above, Defendants' conduct violated the IMFL and the Illinois Locksmith Act.

**ANSWER:   Answering paragraph 137 of the Complaint, deny the allegations contained therein.**

**b.  Violations of §§1692e, e(2), and e(10)**

138.   In an effort to collect the subject loan, Defendants violated §1692e by falsely representing, through implication, that Nikki was no longer the owner of the subject property and that Plaintiffs were no longer authorized to access the subject property. Specifically, the changing of the lock implicitly implies that Nikki is no longer the owner of the subject property and has lost access to the subject property.

**ANSWER:   Answering paragraph 138 of the Complaint, deny the allegations contained**

31

therein.

139.    In an effort to collect the subject loan, Defendants violated §1692e(2) by misrepresenting the legal status of the subject loan. Specifically, by changing the lock, the Defendants falsely represented, though implication, that the foreclosure process has been completed and that subject property no longer belongs to Nikki.

**ANSWER:    Answering paragraph 139 of the Complaint, deny the allegations contained therein.**

140.    In an effort to collect the subject loan, Defendants violated §1692e(l0) by falsely and deceptively representing, through implication, that the foreclosure process has been completed and that the subject property no longer belongs to Nikki

**ANSWER:    Answering paragraph 140 of the Complaint, deny the allegations contained therein.**

141.    As pled above, Plaintiffs were severely harmed by Defendants' conduct.

**ANSWER:    Answering paragraph 141 of the Complaint, deny the allegations contained therein.**

**COUNT V -INTRUSION UPON SECLUSION**
**(PLAINTIFFS AGAINST LA KESHORE AND CENLAR)**

142.    Plaintiffs restate Paragraphs 1 through 85 as fully stated herein.

**ANSWER:    Answering paragraph 142 of the Complaint, repeat, reallege and incorporate herein by reference their responses to the preceding paragraphs of the Complaint.**

143.    To establish a claim for intrusion upon seclusion, Plaintiffs must establish (1) there was an unauthorized intrusion into seclusion; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused anguish and suffering. *Maremont v. Susan Fredman Design Group, Ltd*., 2011 U.S. Dist.

32

LEXIS 140446, at *20 (N.D. TIL 2011).

**ANSWER:  Answering paragraph 143 of the Complaint, affirmatively allege that paragraph 143 violates Fed. R. Civ. P. 8, which limits a pleading to include only a short and plain statement of the claim showing that the pleader is entitled to relief.  In the event that paragraph 143 is properly plead, deny that they violated the law in any way.  Answering further, lack knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 143.**

144.    Defendants intruded into Plaintiffs' seclusion by forcibly entering Plaintiffs' home without authorization and changing the lock.

**ANSWER:    Answering paragraph 144 of the Complaint, deny the allegations contained therein.**

145.    Defendants' conduct was highly offensive and objectionable to a reasonable person.

**ANSWER:    Answering paragraph 145 of the Complaint, deny the allegations contained therein.**

146.    As pled above, Plaintiffs suffered significant mental anguish and suffering as a result of Defendants' conduct.

**ANSWER:    Answering paragraph 146 of the Complaint, deny the allegations contained therein.**

### COUNT VI-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS PLAINTIFFS AGAINST LAKEVIEW AND CENLAR)

147.    Plaintiffs restate Paragraphs 1 through 85 as fully stated herein.

**ANSWER:    Answering paragraph 147 of the Complaint, repeat, reallege and incorporate herein by reference their responses to the preceding paragraphs of the Complaint.**

33

148.    To state a claim for intentional infliction of emotional distress, plaintiffs must establish that (1) the defendants' conduct was extreme and outrageous; (2) the defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) the defendants' conduct actually caused severe emotional distress. *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001).

**ANSWER:    Answering paragraph 148 of the Complaint, affirmatively allege that paragraph 148 violates Fed. R. Civ. P. 8, which limits a pleading to include only a short and plain statement of the claim showing that the pleader is entitled to relief.  In the event that paragraph 148 is properly plead, deny that they violated the law in any way.  Answering further, lack knowledge and/or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 148.**

149.    Defendants' are liable for intentional infliction of emotional distress because (1) forcibly entering Plaintiffs' home and changing the lock without authorization was extreme and outrageous; (2) Defendants knew that forcibly entering Plaintiffs' home and changing the lock would inflict severe emotional distress on Plaintiffs; and (3) Defendants' conduct actually caused Plaintiffs severe emotional distress.

**ANSWER:    Answering paragraph 149 of the Complaint, deny the allegations contained therein.**

150.    At very minimum, Defendants are liable for negligent infliction of emotional distress.

**ANSWER:    Answering paragraph 150 of the Complaint, deny the allegations contained therein.  Answering Plaintiffs' Prayers for Relief, denies that Plaintiffs are entitled to any judgment, award, relief, or any other request or demand made in the Complaint.**

302569740v1 1011352

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiffs failed to mitigate any of Plaintiffs' alleged damages. There are no allegations in the Complaint, nor a record of any efforts that the Plaintiffs made to limit and/or prevent Plaintiffs' alleged damages. This will be further investigated through discovery.

### Second Affirmative Defense

The damages alleged by Plaintiffs may have been the result of other, superseding and/or intervening cause(s) and were not proximately caused by the Defendants. This will be further investigated through discovery.

### Third Affirmative Defense

Some or all of Plaintiffs' claims are barred by the doctrine of consent, waiver and/or acquiesce. To the extent that Five Brothers entered the property at issue in this matter, it was done with the consent and/or acquiesce of Plaintiffs because Plaintiffs permitted Five Brothers to enter the property on July 7, 2017.

### Fourth Affirmative Defense

To the extent that Lakeview or Cenlar are responsible for the actions of Five Brothers, which Defendants deny, it resulted from good faith reliance upon representations made on how Five Brothers would verify occupancy.

### Fifth Affirmative Defense

Lakeview and Cenlar affirmatively state that any violation of law, which they denied occurred, was not intentional and would have resulted from a bona fide error notwithstanding the

302569740v1 1011352

maintenance of procedures reasonably adapted to avoid such error. These procedures include, but are not limited to, policies and procedures the selection of a property preservation company that represents its intended compliance with lawful options to verify occupancy.

## Sixth Affirmative Defense

Some or all of Plaintiffs' claims are preempted by federal law, including, but not limited to the FDCPA, and areas that those federal statutes cover regarding Plaintiff's Illinois state law claims.

## Seventh Affirmative Defense

Some or all of Plaintiffs' claims may be barred by the applicable statute of limitations and/or laches as Plaintiffs waited an unreasonable period of time to bring the claims in this lawsuit.

## Eighth Affirmative Defense

Some or all of Plaintiffs' claims may be subject to and/or barred by a mandatory arbitration clause, which will be further explored in discovery.

## Ninth Affirmative Defense

Some or all of Plaintiffs' claims are barred by lack of consideration or pre-existing duty. In general, to the extent Plaintiffs submitted a loan modification application, there was no obligation to agree to a modification of the loan.

## Tenth Affirmative Defense

Some or all of Plaintiffs' claims are barred by the doctrines of unclean hands or equitable estoppel as Plaintiffs engaged in behavior regarding the mortgage at issue in this matter that resulted in the need to inspect whether the property at issue was occupied.

### Eleventh Affirmative Defense

To the extent there is an agreement in place that governs the parties with respect to a failure to pay a mortgage on the subject property, Plaintiffs breached that agreement first and cannot recover on a breach of contract claim where Plaintiffs were the party who committed the material breach.

### Twelfth Affirmative Defense

Plaintiffs have failed to state a claim upon which relief may be granted. For instance, the damages Plaintiffs have alleged were not caused by any alleged fraud, unfair or deceptive business practices. In addition, Plaintiff has failed to plead certain claims with particularity.

### Thirteenth Affirmative Defense

Some or all of Plaintiffs' claims are barred by the economic loss doctrine as Plaintiffs' claims appear to be in contract, but are seeking damages available on in tort.

### Fourteenth Affirmative Defense

To the extent that there are claims in this action belonging to a minor child, Plaintiff Nikki Parham lacks standing to sue on those claims, pursuant to the Fed. R. Civ. P. 17.

### Fifteenth Affirmative Defense

Defendants are entitled to indemnification on some or all of claims to the extent that Plaintiffs' claims are based on actions done by an independent entity.

**WHEREFORE**, Defendants Lakeview Loan Servicing, LLC and Cenlar FSB having fully responded to the Complaint, pray that the Court dismiss Plaintiffs' action with prejudice against them, order that Plaintiffs take nothing thereby, and award Lakeview Loan Servicing,

LLC and Cenlar FSB their attorney's fees and costs incurred herein, as well as any additional equitable relief the Court deems proper.

## JURY DEMAND

Defendants demand a jury trial pursuant to Fed R. Civ. P. 38.

Respectfully submitted,

/s/ *Carlos A. Ortiz*

**Carlos A. Ortiz**
Attorney Bar No. 1050385
**Brandon S. Stein**
Attorney Bar No. 1092675
**HINSHAW & CULBERTSON LLP**
151 N. Franklin Street, Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
cortiz@hinshawlaw.com
bstein@hinshawlaw.com
*Attorneys for Lakeview Loan Servicing, LLC
and Cenlar FSB*

## CERTIFICATE OF SERVICE

I certify that on September 21, 2018 a copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ *Carlos A. Ortiz*

302569740v1 1011352