# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| NIKKI PARHAM, individually and on behalf of her minor child, B.M., | |
|     Plaintiffs, | Case No.1:18-cv-04678 |
| v. | Honorable Charles R. Norgle, Sr. |
| LAKEVIEW LOAN SERVICING, LLC, CENLAR FSB, FIVE BROTHERS MORTGAGE COMPANY SERVICES AND SECURING, INC., and MASTERBUILT CONSTRUCTION, INC. | Magistrate Judge M. David Weisman |
|     Defendants. | |

## DEFENDANT FIVE BROTHERS MOTION TO DISMISS COUNTS III, IV, V, and VI OF THE PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)

Defendant, FIVE BROTHERS MORTGAGE COMPANY SERVICES AND SECURING, INC., by and through its Attorneys, Lori A. Vanderlaan and Fritz V. Wilson of the law firm of Best, Vanderlaan & Harrington, and in support of its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Code of Civil Procedure, state as follows:

1.    Defendant, FIVE BROTHERS MORTGAGE COMPANY SERVICES AND SECURING, INC., ("Five Brothers,") files the instant Motion to Dismiss certain counts of the Plaintiff's First Amended Complaint at Law.

2.    Plaintiff, Nikki Parham, individually and on behalf of her minor child ("Plaintiff,") has filed an eight count First Amended Complaint, alleging, 1) Breach of contract against Lakeview Loan Servicing, LLC; 2) Trespass to Property against Five Brothers and other Defendants, 3) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act

("ICFA,") 815 ILCS 505/1 et seq., against Five Brothers and other Defendants, 4) violation of the Fair Debt Collection Practices Act ("FDCPA,") 15 USC 1692, et seq., against Five Brothers and other Defendants, 5) Intrusion Upon Seclusion against Five Brothers and other Defendants, 6) Intentional Infliction of Emotional Distress ("IIED,") against Five Brothers and other Defendants, 7) Conversion against Five Brothers and other Defendants, and 8) Negligence against Five Brothers and other Defendants. See Plaintiff's First Amended Complaint, attached as Exhibit "A."

3.     Five Brothers hereby moves this Court to dismiss Counts III under the ICFA, Count IV under the FDCPA, Count V for Intrusion Upon Seclusion, and Count VI for Intentional Infliction of Emotional Distress.

4.     As shown in the attached Memorandum of Law, Plaintiff has failed to state a claim against Five Brothers under the ICFA.

5.     Plaintiff's claim for violation of the ICFA, Count III, should be dismissed, because Illinois Law does not allow a Plaintiff to assert a claim for violation of the ICFA when the Plaintiff is not a consumer, and does not have a consumer relationship with Five Brothers as required by the CFA. Additionally, there has been no deceptive act or practice by Five Brothers to sustain a claim under the ICFA.

6.     Plaintiff's claim under the FDCPA, Count IV, should also be dismissed because Plaintiff failed to bring suit against Five Brothers within the required one year statute of limitations under the FDCPA. The alleged conduct complained of by Plaintiff happened on or about July 7, 2017, however Plaintiff filed suit against Defendant Five Brothers on March 5, 2020. Additionally, Five Brothers cannot be considered a debt collector under the FDCPA, nor was it communicating with Plaintiff in an effort to collect a debt.

7.     Plaintiff's claim for Intrusion Upon Seclusion, Count V, should also be dismissed because Plaintiff failed to bring suit against Five Brothers within the applicable statute of limitations, and the Plaintiff cannot show intentional conduct on the part of Five Brothers to sustain a claim for intrusion upon seclusion.

8.     Plaintiff's claim for Intentional Infliction of Emotional Distress should also be dismissed because Illinois law does not permit a party to bring a claim for IIED where the Defendant's behavior is not extreme and outrageous, or intended to inflict severe emotional distress, or where the Defendant knew there was a high likelihood that its conduct would cause severe emotional distress.

9.     Additionally, Plaintiff cannot maintain a claim for IIED because Plaintiff named Five Brothers outside of the two year statute of limitations for IIED.  The alleged conduct of Five Brothers took place on July 7, 2017, however the Plaintiff's Complaint against Five Brothers was filed on March 5, 2020.  The limitations period expired on July 7, 2019.

10.    For these reasons, and for all the reasons set forth in Five Brothers accompanying Memorandum of Law, Five Brothers requests that the Court dismiss Counts III, IV, V, and VI of the Plaintiff's First Amended Complaint against Five Brothers, with prejudice.

WHEREFORE, the Defendant, FIVE BROTHERS, requests that this Court grant this Motion, and further enter an order granting this Motion and dismissing Counts III, IV, V, and VI of the Plaintiff's First Amended Complaint with prejudice.

Respectfully Submitted,
**FIVE BROTHERS MORTGAGE COMPANY SERVICES and SECURING, INC.,**

By: _____
     One of Its Attorneys

Lori A. Vanderlaan
Fritz V. Wilson
**Best, Vanderlaan & Harrington**
25 E. Washington St., # 800
Chicago, Illinois 60602
(312) 819-1100
Fax: (312) 819-8062
lvanderlaan@bestfirm.com
fwilson@bestfirm.com
eservice@bestfirm.com

## CERTIFICATE OF SERVICE

I, the undersigned, state that I caused copies of the foregoing to be served, with enclosures referred to therein, if any, by Operation of the Court's Electronic Filing System, to the Attorneys of Record at the Address(es) and/or facsimile number(s) of record, from 25 E. Washington St., Suite 800, Chicago, Illinois, prior to 5:00 p.m., on July 1, 2020.

Re:     Parham, et al. v. Masterbuilt Construction, Inc., et al.
        Case No.:       18-cv-04678
        BVH File No.:LIB.20198

## <u>ATTORNEY SERVICE LIST</u>

Mohammed Omar Badwan
Sulaiman Law Group, Ltd.
mbadwan@sulaimanlaw.com
2500 S. Highland Ave., Suite 200
Lombard, IL  60148
(630) 575-8181
Attorney for Plaintiff
Nikki Parham, individually and on behalf of her minor child, B.M.

Joseph Scott Davidson
Sulaiman Law Group, Ltd.
jdavidson@sulaimanlaw.com
2500 S. Highland Ave., Suite 200
Lombard, IL  60148
(630) 575-8181
Attorney for Plaintiff
Nikki Parham, individually and on behalf of her minor child, B.M.

Adam L. Saper
Carlos Ortiz
Hinshaw & Culbertson LLP
asaper@hinshawlaw.com
151 N. Franklin Street, Suite 2500
Chicago, IL  60606
(312) 704-3000
Attorney for Defendants
Lakeview Loan Servicing, LLC and Cenlar FSB

Adam Toosley
Freeborn & Peters
atoosley@freeborn.com
311 S. Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6000
Attorney for Defendant
Masterbuilt Construction, Inc.

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

NIKKI PARHAM, individually and on behalf
of her minor child, B.M.,

     Plaintiffs,

v.

LAKEVIEW LOAN SERVICING, LLC,
CENLAR FSB, FIVE BROTHERS MORTGAGE
COMPANY SERVICES AND SECURING,
INC., and MASTERBUILT CONSTRUCTION,
INC.

     Defendants.

Case No.1:18-cv-04678

Honorable Charles R. Norgle, Sr.

Magistrate Judge M. David Weisman

## FIRST AMENDED COMPLAINT

**NOW COME** Plaintiffs, NIKKI PARHAM, individually and on behalf of her minor child,

B.M. (individually, "Nikki" and "B.M.," collectively "Plaintiffs") by and through their

undersigned counsel, complaining of the Defendants, LAKEVIEW LOAN SERVICING, LLC,

CENLAR FSB, FIVE BROTHERS MORTGAGE COMPANY SERVICES AND SECURING,

INC., and MASTERBUILT CONTSTRUCTION, INC. (collectively, "Defendants"), as follows:

### NATURE OF THE ACTION

1.  Plaintiffs bring this action seeking redress for breach of contract, trespass to real property,

violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815

ILCS 505/1 et seq., violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to

15 U.S.C. §1692, intrusion upon seclusion, intentional infliction of emotional distress, conversion,

and negligence.

1



DEFENDANT'S
EXHIBIT
A

2. All of Plaintiffs' claims stem from Defendants' illegal debt collection activity relating to Nikki's home mortgage loan. Defendants illegally broke into Nikki's home without authorization and damaged Nikki's home.

## JURISDICTION AND VENUE

3. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

4. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Plaintiffs reside in this judicial district, Defendants conduct business in this judicial district, and all of the events or omissions giving rise to the claims occurred within this district.

## PARTIES

6. Plaintiffs are natural persons that reside at a property commonly known as 7523 South Ridgeland Avenue, Chicago, IL ("subject property").

7. Nikki is a single mother of two children, whom at all times relevant was employed at Chicago Commons, a not-for-profit social organization that serves under-resourced communities throughout the city of Chicago.

8. B.M. is Nikki's 15 year old son that suffers from a neurological disorder known as epilepsy.

9. The subject property serves as Nikki's family's principal residence.

10. Lakeview Loan Servicing, LLC ("Lakeview") is a mortgage company based out of Coral Gables, Florida. Lakeview is in the business of extending mortgage loans to consumers across the United States, including consumers in Illinois. Lakeview is also in the business of acquiring and servicing mortgage loans that were originated by a third party. Lakeview acquires mortgage loans

2

and services mortgage loans owed by Illinois consumers. Lakeview does business in Illinois. Lakeview is registered with the Illinois Secretary of State.

11. Cenlar FSB ("Cenlar") is a mortgage loan subservicing company with headquarters located in Ewing, New Jersey. Cenlar services and subservices mortgage loans for third party loan owners. Cenlar services and subservices mortgage loans owed by Illinois consumers. Cenlar does business in Illinois. Cenlar is registered with the Illinois Secretary of State.

12. Five Brothers Mortgage Company Services and Securing, Inc. ("Five Brothers") is an asset preservation company with headquarters located in Warren, Michigan. Five Brothers provides property preservation services to mortgage loan servicers. According to its website, "Five Brothers consistently provides innovative, regulatory-compliant asset management solutions that save time, eliminate errors and increase efficiency for residential mortgage servicers nationwide."[1] Five Brothers provides services to mortgage loan servicers that service mortgage loans extended to Illinois consumers and thus does business in Illinois. Five Brothers is registered with the Illinois Secretary of State.

13. Masterbuilt Construction, Inc.("Masterbuilt") is an asset preservation company based out of Lombard, Illinois. Masterbuilt provides property preservation services to mortgage loan servicers. Masterbuilt provides property preservation services to mortgage loan servicers that service mortgage loans extended to Illinois consumers. Masterbuilt is registered with the Illinois Secretary of State.

---

[1] www.fivebrms.com (last visited March 5, 2020)

## FACTS SUPPORTING CAUSES OF ACTION

14. On May 29, 2014, Nikki obtained a mortgage loan ("subject loan") in the amount of $157,003.00 from Sun West Mortgage Company, Inc. ("Sun West"), secured by the subject property.

15. B.M. was not a party to the subject loan.

16. Pursuant to the terms of the loan, Nikki was obligated to make monthly principal and interest payments in the initial amount of $772.36 for 30 years.

17. Due to a decrease in monthly income, Nikki defaulted on the subject loan.

18. In late 2015, after the subject loan was in default, Lakeview acquired the subject loan from Sun West.

19. As soon as Lakeview acquired the subject loan, it assigned servicing rights for the subject loan to Cenlar.

20. Accordingly, Cenlar became the face of the subject loan and was responsible for the day-to-day management and administration of the subject loan.

21. In December 2016, Nikki submitted a complete loan modification application to Cenlar. The loan modification, if granted, would modify the repayment terms of the subject loan and deem Nikki current on the subject loan.[2]

22. Despite submitting a complete loan modification application, Cenlar never responded to Nikki's loan modification application.

---

[2] Loan modifications are designed to prevent homeowners from losing their homes by deferring the default amount to the end of the loan. Loan modifications typically change the terms of the loan by extending the repayment period without reducing the principal and interest balance owed on a loan.

4

23.    On January 13, 2016, Lakeview filed a foreclosure complaint in the Circuit Court of Cook County seeking to foreclose on the subject property, Case No. 2016-CH-00476 ("foreclosure proceeding").

24.    On November 30, 2016, in an effort to save her family's home, Nikki filed a Chapter 13 bankruptcy in the Bankruptcy Court for the Northern District of Illinois, Case No. 16-37792.

25.    By operation of law, Nikki's bankruptcy filing stayed the foreclosure proceeding. *See* 11 U.S.C. §362.

26.    In February 2017, B.M. underwent brain surgery to treat the subclinical seizures that stem from his epilepsy disorder.

27.    On March 9, 2017, Nikki filed a Chapter 13 Plan which proposed a repayment plan that would, in pertinent part, (1) recommence contractual monthly payments on the subject loan; and (2) cure the default on the subject loan over 60 months.

28.    On April 3, 2017, the Bankruptcy Court confirmed Nikki's Chapter 13 Plan ("Confirmed Plan"), thus binding Lakeview and Cenlar to the terms of the Confirmed Plan.

29.    Due to Nikki's dire financial circumstances, Nikki fell behind on her monthly payments as prescribed by the Confirmed Plan.

30.    As a result, on June 5, 2017, Lakeview obtained authorization from the Bankruptcy Court to continue the foreclosure proceeding.

31.    The foreclosure proceeding progressed and a sale of the subject property was scheduled for July 28, 2017.

32.    Prior to the sale date, Cenlar sent Nikki a loan modification application.

33.    On June 19, 2017, in an effort to save her family's home, Nikki submitted a complete loan modification application to Cenlar.

5

34. Upon information and belief, in late 2017, Cenlar employed Five Brothers to facilitate the collection of the subject loan and to perform property preservation services at the subject property, which in turn employed Masterbuilt to do the same.

35. On or about July 7, 2017, Cenlar issued a detailed work order to its agents Five Brothers and/or Masterbuilt ("Cenlar's agents") to perform specific property preservation services at the subject property in an effort to facilitate collection on the subject loan.

36. Shortly thereafter, Cenlar's agents went to the subject property to carry out Cenlar's work order.

37. At the time Cenlar's agents arrived at the subject property, Nikki was at work and B.M. was home alone.

38. Upon arrival to the doorstep to the subject property, Cenlar's agents began banging loudly on the front door.

39. In response to the banging, B.M., not expecting any visitors, went to a nearby window and observed an individual banging on the front door and multiple individuals congregating by the front door and lawn.

40. B.M., fearing for his safety, did not answer the door or otherwise try to communicate with Cenlar's agents as he did not recognize them and did not know why they were at his home.

41. Shortly thereafter, the banging stopped and B.M. thought that Cenlar's agents left the subject property.

42. A couple of minutes later, B.M. heard loud bangs coming from the back door of the subject property.

43. B.M., fearing for his safety, did not open the back door and believed that Cenlars' agents would leave if nobody answered the back door.

44. Shortly thereafter, B.M. started hearing loud booms coming from the back door.

45. At this point, B.M. believed that Cenlar's agents were trying to break down the back door.

46. Fearing for his safety, B.M. ran to the basement of the subject property and hid in the furnace closet.

47. Shortly thereafter, B.M. heard a loud crash, followed by the sound of footsteps on the main level of the subject property.

48. In a state of panic and fright, B.M. went to a computer near the furnace closet and sent an email to Nikki stating that someone broke into the house and urged Nikki to come home.

49. At that point, B.M. started hearing the voices of Cenlar's agents as they walked around the house.

50. At no point after entry into the subject property did Cenlar's agents identify themselves.

51. Shortly thereafter, Cenlar's agents went to the basement where B.M. was hiding in the furnace closet and began shining flashlights throughout the basement.

52. At that point, B.M. believed that Cenlar's agents were looking for him and were going to kill him.

53. Cenlar's agents then approached the furnace closet where B.M. was hiding.

54. In a state of terror, B.M. hid as far back behind the furnace as possible.

55. Cenlar's agents opened the furnace closet and flashed their flashlights into the furnace closet.

56. Cenlar's agents did not see B.M. and left the basement.

57. B.M. hid in the furnace closet until he can no longer hear any noises in the subject property. After B.M. believed that he was safe, he finally came out of hiding and went upstairs.

7

58. B.M. looked outside of a window on the main level of the subject property and observed his neighbor talking to police officers right outside the front door of the subject property.

59. B.M. could not open the front door so he told to the police officers to meet him at the back door of the subject property.[3]

60. When B.M. got to the back door, he discovered that Cenlar's agents had forcibly broke into the subject property by breaking the back door and that Cenlar's agents had placed a lock on the back door.

61. Shortly thereafter, Nikki arrived at the subject property and discovered the following: (1) police at her home; (2) B.M. in a state of extreme emotional distress; (3) a lock on the back door that restricted Nikki's access to her home; (4) open drawers and cabinets; (5) a broken back door with screws and door panel on the floor; and (6) a missing flat-screen television.

62. Realizing that she could not enter the subject property, Nikki solicited the help of the police officers on site to break the lock that Cenlar's agents placed on the back door.

63. The police tried to break the lock on the back door but were unable to. Accordingly, Nikki was forced to hire a locksmith to break the lock on the back door so she can access her home.

64. After obtaining access to her home, Nikki filed a police report for the burglary/forcible entry that was committed by Cenlar's agents.

65. Defendants did not leave any message or communication at the subject property notifying Plaintiffs of their identities or the reason they changed the locks, leaving Plaintiffs to wonder if they were in imminent danger of a future break-in.

---

[3] The front door to the subject property was inoperable prior to the break-in. Accordingly, the back door was the sole point of entry to the subject property.

66. Shortly after the break-in, Nikki called Cenlar to inquire if Cenlar had anything to do with the break-in.

67. In response to Nikki's inquiry, a Cenlar representative acknowledged that Cenlar sent representatives to the subject property in an effort to determine if the subject property was vacant.

68. Cenlar knew or should have known that the subject property was not vacant because Nikki had recently submitted a loan modification application, which indicated the property was occupied.

69. Up until the time the Cenlar representative told Nikki that it was Cenlar that sent representatives to the subject property, Plaintiffs did not know who broke into their home.

70. At all times relevant, Nikki was the legal owner of the subject property.

71. At all times relevant, the subject property served as Plaintiffs' principal residence and family home.

72. At all times relevant, the subject property was fully furnished.

73. At all times relevant, Defendants did not have authority to enter the subject property.

74. At all times relevant, Defendants did not notify Plaintiffs that it would be sending representatives to the subject property to determine if the subject property was vacant.

75. At all times relevant, Defendants did not have a legal right to enter the subject property.

76. At all times relevant, Lakeview had a consensual agency relationship with Cenlar whereby Lakeview (as the principal) had the right to control and direct the activities of Cenlar, and Cenlar had the authority to act on behalf of Lakeview. Lakeview, as the principal of Cenlar, is liable for the acts of Cenlar and Cenlar's agents.

77. At all times relevant, Cenlar had a consensual agency relationship with Five Brothers whereby Cenlar (as the principal) had the right to control and direct the activities of Five Brothers,

and Five Brothers had the authority to act on behalf of Cenlar. Cenlar, as the principal of Five Brothers, is liable for the acts of Five Brothers and its agents.

78.    At all times relevant, Five Brothers had a consensual agency relationship with Masterbuilt whereby Five Brothers (as the principal) had the right to control and direct the activities of Masterbuilt, and Masterbuilt had the authority to act on behalf of Five Brothers.

79.    Upon information and belief, Defendants do not have a license to change locks as required by the Illinois Locksmith Act.

## PLAINTIFFS' DAMAGES

80.    Plaintiffs have suffered significant damages that were proximately caused by Defendants' conduct.

81.    As a result of Defendants' conduct, Plaintiffs suffered extreme emotional distress, anxiety, mental anguish, and pain and suffering resulting from (a) the constant fear that their home will be broken into again; and (b) the deprivation of the sense of security and safety in their home.

82.    As a result of Defendants' conduct, Plaintiffs lost access to their home for a limited period of time.

83.    As a result of Defendants' conduct, Plaintiffs permanently lost the sense of security and safety in their home.

84.    As a result of Defendants' conduct, Plaintiffs permanently lost the enjoyment of their home.

85.    As a result of Defendants' conduct, Plaintiffs permanently lost the comfort of their home.

86.    As a result of Defendants' conduct, Plaintiffs suffered extended loss of sleep resulting from nightmares involving break-ins to their home.

87.    As a result of Defendants' conduct, Plaintiffs' back door was significantly damaged.

88.   As a result of Defendants' conduct, Nikki suffered out of pocket expenses incurred for (1) hiring a locksmith to break the lock on the back door; (2) fixing the damage to the back doors; and (3) purchasing a new lock for the back door.

89.   As a result of Defendants' conduct, Plaintiffs expended significant time and energy fixing the damaged door and replacing the lock on the back door.

90.   As a result of Defendants' conduct, Plaintiffs suffered public humiliation and embarrassment arising from the police presence at their home.

91.   As a result of Defendants' conduct, Nikki suffered the loss of income. Specifically, Nikki took 3 days off of work after the break-in to stay home and comfort B.M. as he was extremely traumatized by the break-in.

92.   As a result of Defendants' conduct, Plaintiffs were permanently deprived of their flat-screen television.

## COUNT I – BREACH OF CONTRACT (NIKKI AGAINST LAKESHORE)

93.   Plaintiffs restate Paragraphs 1 through 92 as fully stated herein.

94.   The subject loan is a valid and enforceable contract between Nikki and Sun West and its successors and assigns ("the contract").

95.   Lakeview is Sun West's successor and assign, and thus Lakeview is bound by the terms of the contract.

96.   Pursuant to the contract, Lakeview "may inspect [the subject property] if the [subject property] is vacant or abandoned or the loan is in default."

97.   The contract further states that Lakeview "may take reasonable action to protect and preserve" the subject property if it is vacant or abandoned.

11

98. Lakeview breached the contract by breaking into the subject property without Nikki's consent.

99. Although the contract permits Lakeview to "inspect" the subject property, the contract does not authorize Lakeview or its agents to forcibly break into the subject property.

100. Moreover, Lakeview breached the contract by taking unreasonable action to "protect and preserve" the subject property because the subject property was not vacant or abandoned.

101. Moreover, forcibly breaking into the subject property is not "reasonable" by any standard.

102. As pled above, Nikki was severely harmed by Lakeview's breach of the contract and thus is entitled to compensation for her damages.

103. Moreover, Nikki is entitled to punitive damages for Lakeview's breach of the contract because the break in constituted independent and willful torts (trespass, intrusion upon seclusion, and intentional infliction of emotional distress) accompanied by "wantonness" and "oppression." *See Hunter Douglas Metals, Inc. v. Edward C. Mange Trading Co.,* 586 F. Supp. 926, 929 (7th Cir. 1984) (finding that where a breach of contract contains allegations sufficient to support both a contract claim and an independent tort, both may stand and punitive damages may be awarded if plaintiff is able to sustain his burden under the tort theory.)

**WHEREFORE,** Plaintiff NIKKI PARHAM respectfully requests that this Honorable Court:

a.  Find that Lakeview materially breached the contract;

b.  Award Plaintiff her actual damages;

c.  Award Plaintiff punitive damages; and

d.  Award Plaintiff any other relief this Honorable Court deems equitable and just.

## COUNT II – TRESPASS TO REAL PROPERTY
### (NIKKI AGAINST ALL DEFENDANTS)

104.    Plaintiffs restate Paragraphs 1 through 92 as fully stated herein.

105.    At all times relevant, Nikki owned the subject property and had a legal right to exclusive possession of the subject property.

106.    Defendants had actual knowledge that Nikki owned and occupied the subject property.

107.    Without consent or a right to possession, Defendants forcibly entered and assumed dominion and control of the subject property.

108.    Without consent or a right to possession, Defendants placed a lock on the back door of the subject property, thus depriving Nikki of access to the subject property.

109.    Defendants' forced entry and trespass upon the subject property interfered with Nikki's possession, ownership, use, and enjoyment of the subject property.

110.    Upon information and belief, it is Defendants' normal business practice to ignore possessory and ownership rights of homeowners, and to illegally take possession of properties without consent or a court order, in conscious disregard of the rights of homeowners.

111.    As pled above, Nikki was severely harmed by Defendants' conduct.

**WHEREFORE**, Plaintiff NIKKI PARHAM respectfully requests that this Honorable Court:

a.      Find that Defendants unlawfully trespassed on the subject property;

b.      Award Plaintiff her actual damages;

c.      Award Plaintiff punitive damages; and

d.      Award Plaintiff any other relief this Honorable Court deems equitable and just.

13

**COUNT III – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**(PLAINTIFFS AGAINST ALL DEFENDANTS)**

112.   Plaintiffs restate Paragraphs 1 through 92 as fully stated herein.

113.   Plaintiffs meet the ICFA definition of "consumer" and "person."

114.   Defendants violated ICFA by employing unfair and deceptive acts and practices against Plaintiffs.

115.   Defendants specialize in mortgage lending, servicing, debt collection, property preservation, and the expedited turnover of real property to satisfy defaulted mortgage debt. These actions occur in the course of conduct involving trade or commerce.

**a.   Unfairness and Deception**

116.   It was unfair for Defendants to dispossess the Plaintiffs of the subject property without a court order authorizing the same.

117.   It was unfair for Defendants to employ self-help and take possession of the subject property outside the judicial process mandated by the Illinois Mortgage Foreclosure Law ("IMFL") (defining possessory rights and the prohibition against harassment or intimidation to compel occupants to abandon mortgaged property).

118.   It was unfair for the Defendants to lock the Plaintiffs out of their home in an effort to force them to "give up" possession of the subject property.

119.   It was unfair for Defendants to change the lock of the back door of the subject property without having a valid license required by the Illinois Locksmith Act.

120.   It was unfair for Defendants to forcibly enter Plaintiffs' home without legal authorization to do the same.

14

121.    It was unfair for Defendants to cause damage to the back door of the subject property and not compensate Nikki for the damage caused by Defendants.

122.    It was unfair for Defendants to steal Plaintiffs' flat-screen television and not compensate Plaintiffs for the same.

123.    Defendants' conduct offends public policy as it demonstrates an industry-wide practice of maximizing profits by ignoring the possessory rights of homeowners in violation of the law, expediting the foreclosure process by circumventing the law, and attempting to profit from the expedited sale of real property.

124.    It was unfair and deceptive for Lakeview to mislead Nikki into believing that Lakeview may modify the subject loan when Lakeview had no intent to modify or even consider a modification of the subject loan.

125.    Plaintiffs had no choice but to submit to Defendants' conduct. Specifically, Plaintiffs had no control over (1) the sham loan modification process; (2) the changing of the lock; (3) the destruction to the subject property; and (4) their ability to enter their home after Defendants illegally changed the locks.

126.    It was unfair and deceptive for Defendants to erroneously deem the subject property "vacant" or "abandoned" when Defendants had actual knowledge that the subject property was occupied as the loan modification applications submitted by Nikki expressly stated that the subject property was occupied.

127.    It was unfair and deceptive for Defendants to erroneously deem the property "vacant" or "abandoned" despite the fact that the subject property was conspicuously occupied and well-maintained.

15

128.     Defendants intended that the Plaintiffs would rely on their unfair and deceptive acts; their overall scheme was designed to thwart Nikki's attempt to keep her home and designed to buffalo Nikki into giving up her home without having to complete the foreclosure process.

129.     Nikki did rely on upon Defendants' unfair and deceptive acts by completing the loan modification application that Lakeview and/or Cenlar had no intention of granting.

130.     Defendants were hoping that their illegal conduct would ultimately drive the Plaintiffs out of their home so Defendants could take possession without having to complete the lengthy foreclosure process. Defendants' objective was to profit from an expedited sale of the subject property.

131.     Defendants' overall conduct towards Plaintiffs was oppressive and against public policy.

132.     As pled above, Plaintiffs were severely harmed by Defendants' conduct.

133.     Defendants' conduct causes substantial injury to consumers generally because:

   i.  consumers reasonably expect to be safe and secure in their own property;

   ii.  consumers reasonably expect mortgage companies to communicate with them truthfully and accurately regarding the occupancy status of a home or any claims of vacancy or abandonment;

   iii.  consumers reasonably expect mortgage companies to evaluate their loan modification applications in good faith;

   iv.  consumers reasonably expect companies to follow state and federal law and their own guidelines;

   v.  consumers reasonably expect that companies will not take illegal action to expedite a foreclosure and bully consumers from their property;

   vi.  consumers reasonably expect companies to make honest efforts to resolve a dispute, instead of misrepresenting facts and ignoring requests and inquiries; and

vii. consumers reasonably expect mortgage companies to honor and respect laws designed to protect consumers.

viii. consumers reasonably expect property preservation companies to not forcibly break into their homes, change the locks, and steal their personal property.

134. An award of punitive damages is appropriate because Defendants' conduct was outrageous, willful, wanton, showed a reckless disregard for the rights of the Plaintiffs, and was designed to take advantage of a vulnerable family.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court:

    a.    Enter judgment in Plaintiffs' favor and against Defendants;

    b.    Award Plaintiffs their actual damages;

    c.    Award Plaintiffs punitive damages;

    d.    Award Plaintiffs their reasonably attorney's fees and costs; and

    d.    Award Plaintiffs any other relief this Honorable Court deems equitable and just.

### COUNT IV – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (PLAINTIFFS AGAINST ALL DEFENDANTS)

135. Plaintiffs restate Paragraphs 1 through 92 as fully stated herein.

136. The subject loan is a "debt" as defined by the FDCPA §1692a(5) because the mortgage loan was incurred to finance the purchase of Nikki's principal residence, and thus incurred for personal, family, or household purposes.

137. Defendants are a "debt collector" as defined by the FDCPA §1692a(6) because they use instrumentalities of interstate commerce or the mails to collect debts and enforce security interests.

138. Defendants are a "debt collector" as defined by the FDCPA §1692a(6) because their principal business purpose is the collection of debts.

17

139.     Defendants are a "debt collector" as defined by the FDCPA §1692a(6) because they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

140.     Defendants are a "debt collector" as defined by the FDCPA §1692a(6) because they are in the business of enforcing security interests.

141.     Defendants Lakeview and Cenlar are a "debt collector" as defined by the FDCPA §1692a(6) because they acquired rights to the subject loan after it was in default.

142.     At all times relevant, Defendants were attempting to collect a debt owed by Nikki to Lakeview.

a.  **Violations of §§1692f(1) and f(6)(A)**

143.     In an effort to collect the subject loan, Defendants violated §§1692f(1) and(6)(A) by taking illegal non-judicial action and employing self-help to dispossess the Plaintiffs of the subject property. As stated above, Defendants had no legal or contractual right to forcibly enter the subject property, change the lock, and take possession of the subject property because (1) the foreclosure proceeding was still pending and Defendants did not have a court order authorizing them to take possession of the subject property and (2) it was unnecessary to "preserve" the subject property because the subject property was not "vacant" or "abandoned" and conspicuously in good condition.

144.     Defendants evicted and dispossessed Plaintiffs from their home without a valid basis and in violation of state law.

145.     As stated above, Defendants' conduct violated the IMFL and the Illinois Locksmith Act.

b.  **Violations of §§1692e, e(2), and e(10)**

18

146. In an effort to collect the subject loan, Defendants violated §1692e by falsely representing, through implication, that Nikki was no longer the owner of the subject property and that Plaintiffs were no longer authorized to access the subject property. Specifically, the changing of the lock implicitly implies that Nikki is no longer the owner of the subject property and has lost access to the subject property.

147. In an effort to collect the subject loan, Defendants violated §1692e(2) by misrepresenting the legal status of the subject loan. Specifically, by changing the lock, the Defendants falsely represented, though implication, that the foreclosure process has been completed and that subject property no longer belongs to Nikki.

148. In an effort to collect the subject loan, Defendants violated §1692e(10) by falsely and deceptively representing, through implication, that the foreclosure process has been completed and that the subject property no longer belongs to Nikki

149. As pled above, Plaintiffs were severely harmed by Defendants' conduct.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court:

   a.   Enter judgment in Plaintiffs' favor and against Defendants;

   b.   Award Plaintiffs their actual damages;

   c.   Award Plaintiffs statutory damages;

   d.   Award Plaintiffs reasonable attorney's fees and costs under 15 U.S.C. §1692k; and

   d.   Award Plaintiffs any other relief this Honorable Court deems equitable and just.

**COUNT V – INTRUSION UPON SECLUSION**
**(PLAINTIFFS AGAINST ALL DEFENDANTS)**

150. Plaintiffs restate Paragraphs 1 through 92 as fully stated herein.

151.    To establish a claim for intrusion upon seclusion, Plaintiffs must establish (1) there was an unauthorized intrusion into seclusion; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused anguish and suffering. *Maremont v. Susan Fredman Design Group, Ltd.,* 2011 U.S. Dist. LEXIS 140446, at *20 (N.D. Ill. 2011).

152.    Defendants intruded into Plaintiffs' seclusion by forcibly entering Plaintiffs' home without authorization and changing the lock.

153.    Defendants' conduct was highly offensive and objectionable to a reasonable person.

154.    As pled above, Plaintiffs suffered significant mental anguish and suffering as a result of Defendants' conduct.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court:

   a.      Enter judgment in Plaintiffs' favor and against Defendants;

   b.      Award Plaintiffs their actual damages;

   c.      Award Plaintiffs punitive damages; and

   d.      Award Plaintiffs any other relief this Honorable Court deems equitable and just.

### COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (PLAINTIFFS AGAINST ALL DEFENDANTS)

155.    Plaintiffs restate Paragraphs 1 through 92 as fully stated herein.

156.    To state a claim for intentional infliction of emotional distress, plaintiffs must establish that (1) the defendants' conduct was extreme and outrageous; (2) the defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) the defendants' conduct actually caused severe emotional distress. *Honaker v. Smith,* 256 F.3d 477, 490 (7th Cir. 2001).

157.  Defendants' are liable for intentional infliction of emotional distress because (1) forcibly entering Plaintiffs' home and changing the lock without authorization was extreme and outrageous; (2) Defendants knew that forcibly entering Plaintiffs' home and changing the lock would inflict severe emotional distress on Plaintiffs; and (3) Defendants' conduct actually caused Plaintiffs severe emotional distress.

158.  At very minimum, Defendants are liable for negligent infliction of emotional distress.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court:

    a.  Enter judgment in Plaintiffs' favor and against Five Brothers and Masterbuilt;

    b.  Award Plaintiffs their actual damages;

    c.  Award Plaintiffs punitive damages; and

    d.  Award Plaintiffs any other relief this Honorable Court deems equitable and just.

### COUNT VII - CONVERSION
### (AGAINST FIVE BROTHERS AND MASTERBUILT)

159.  All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

160.  Conversion is "the unauthorized deprivation of property from the person entitled to its possession." *Law v. Yanni (In re Estate of Yanni)*, 400 Ill. Dec. 721, 48 N.E.3d 1161, 1166, 2015 IL App (2d) 150108 (Ill. App. Ct. 2015).

161.  Conversion's essence is "the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held." *Id.*

162.  A cause of action for conversion requires "(1) the unauthorized and wrongful assumption of control, dominion, or ownership by the defendant over the personal property of

another; (2) the plaintiff's right in the property; (3) the plaintiff's absolute and unconditional right to immediate possession of the property; and (4) a demand for possession of the property." *Id.*

163. Cenlar's agents, without authority or consent, assumed control, dominion, or ownership over Nikki's personal property, namely her flat-screen television.

164. Nikki has an immediate, absolute, and unconditional right to possession to her personal property.

165. Cenlar's agents destroyed or remained in unlawful possession of Nikki's personal property.

166. Nikki demanded the return of her personal property from Cenlar's agents, or a demand of her personal property would be futile because Cenlar's agents sold or otherwise disposed of Nikki personal property.

167. Cenlar's agents have made no attempt to replace or return Nikki's personal property or offer to pay the equivalent monetary value.

168. Cenlar's agents' actions proximately caused the loss of Nikki's personal property.

**WHEREFORE,** Plaintiffs respectfully requests that this Honorable Court:

a.　　Enter judgment in their favor and against Five Brothers and Masterbuilt;

b.　　Award Plaintiffs their actual damages;

c.　　Award Plaintiffs punitive damages; and

d.　　Award such other relief as this Court deems just and proper.

### COUNT VIII - NEGLIGENCE
### (AGAINST FIVE BROTHERS AND MASTERBUILT)

169. Plaintiffs restate Paragraphs 1 through 92 as fully stated herein.

170. Cenlar's agents voluntarily exercised control and dominion over the subject property and Plaintiffs' personal property. Once a party voluntarily undertakes to perform a service, it must do so in a manner that does not increase the risk of harm to the person affected by the undertaking.

171. Cenlar's agents took affirmative steps to control access to and possession of the subject property by changing the locks, restricting access for a period of time, and exercising dominion and control over the personal property therein.

172. Cenlar's agents breached their duty to take reasonable steps to protect the subject property, comply with the law, or follow the practices and procedures within their own manuals and work order guidelines.

173. Cenlar's agents breached their duty by (a) failing to protect or secure the subject property; (b) violating the law; (c) failing to allow their own formalized procedures, and (d) failing to use reasonable care when "securing" the subject property.

174. Cenlar's agents breached their duty to act prudently by contributing to and enabling the destruction of the subject property and Plaintiffs' personal property and by failing to prevent any loss or destruction after voluntarily exercising control and dominion over the subject property.

175. It was reasonably foreseeable that unilaterally taking control and failing to take basic step to protect the subject property violated the law and Cenlar's agents' own procedures.

176. It was reasonably foreseeable that taking dominion and control of the subject property and actively restricting Plaintiffs' access to the subject property would damage Plaintiffs.

177. Cenlar's agents were aware that their actions would likely result in injury to Plaintiffs, but willfully ignored their duty of reasonable care. Cenlar's agents acted with such gross and willful negligence as to indicate willful and wanton disregard of Plaintiffs' rights.

23

178. Cenlar's agents' actions proximately caused damages to the subject property and Plaintiffs.

179. As pled above, Plaintiffs were severely harmed by Cenlar's agents' conduct.

**Plaintiffs demand a trial by jury.**

Dated: March 5, 2020

Respectfully Submitted,

/s/ Mohammed O. Badwan

Mohammed O. Badwan, Esq.
Joseph S. Davidson, Esq.
*Counsel for Plaintiffs*
Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Ste. 200
Lombard, IL 60148
Phone (630) 575-8180
Fax (630) 575-8188
mbadwan@sulaimanlaw.com
jdavidson@sulaimanlaw.com

24