IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| NIKKI PARHAM, individually and on behalf of her minor child, B.M., <br><br> Plaintiffs, <br><br> v. <br><br> LAKEVIEW LOAN SERVICING, LLC, et al., <br><br> Defendants. | Case No. 1:18-cv-04678 <br><br> Judge Charles R. Norgle |

## ORDER

Motions for extension of time [57] [67] are granted. Five Brothers' motion to dismiss [61] is denied. Five Brothers' motion to dismiss [70] is granted in part and denied in part. Masterbuilt's motion to dismiss [78] is granted in part and denied in part.

## MEMORANDUM OPINION

Pending before the Court are motions to dismiss by Defendants Five Brothers Mortgage Company Services and Securing, Inc. ("Five Brothers") and Masterbuilt Construction, Inc. ("Masterbuilt") (collectively, "Defendants"). Specifically, these Defendants move to dismiss Plaintiffs' claims regarding the Illinois Consumer Fraud and Deceptive Business Practices Act (Count III), the Fair Debt Collection Practices Act (Count IV)[1], intrusion upon seclusion (Count V), and intentional infliction of emotional distress (Count VI). While the Court has already dismissed Count IV as untimely (Dkt. 95), the Court now finds that Plaintiffs have met the notice-pleading requirements regarding the other counts and discovery should proceed. The Court denies the motions in part as to Counts III, V, and VI.

---

[1] The Court has already granted the present motions in part and dismissed Count IV of Plaintiffs' complaint with prejudice as to Defendants Five Brothers and Masterbuilt only. Dkt. 95.

1

## I. Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the plaintiff is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-557 (2007). This statement must provide sufficient plausible facts to put a defendant on notice of the claims against him. Brooks v. Ross, 578 F. 3d 574, 581 (7th Cir. 2009). The complaint "must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above a speculative level.'" Doe v. Village of Arlington Heights, 782 F.3d 911, 914 (7th Cir. 2015) (quoting Twombly, 550 U.S. at 555, 570). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citations and quotation marks omitted). The court "must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." Virnich v. Vorwald, 664 F.3d 206, 212 (7th Cir. 2011).

## II. Facts

This case involves a foreclosure and allegedly illegal intrusion into Plaintiff Nikki Parham's ("Parham") property. According to Parham, she obtained a mortgage loan from Sun West Mortgage Company, Inc. in 2014. Defendant Lakeview Loan Servicing, LLC. ("Lakeview") subsequently acquired the loan. After Parham defaulted on the loan, Lakeview assigned servicing rights for the loan to Cenlar FSB ("Cenlar").

On January 13, 2016, Lakeview filed a foreclosure complaint in the Circuit Court of Cook County seeking to foreclose on the subject property, Case No. 2016-CH-00476. On November 30, 2016, Parham filed a Chapter 13 bankruptcy in the Bankruptcy Court for the Northern District of Illinois, Case No. 16-37792. On April 3, 2017, the Bankruptcy Court confirmed a Chapter 13 Plan,

but Parham again fell behind on payments and on June 5, 2017, Lakeview obtained authorization from the Bankruptcy Court to continue the foreclosure proceeding. The foreclosure proceeding progressed, and a sale of the subject property was scheduled for July 28, 2017. Parham alleges that—prior to the sale date—Cenlar sent her a loan modification application, which she submitted on June 19, 2017. The pleadings are silent as to whether the application was received, but in any event, no modification was approved. The sale pursuant to the Court order was to proceed.

Plaintiffs allege that in late 2017, Cenlar employed Five Brothers to facilitate the collection of the subject loan and to perform property preservation services, which in turn employed Masterbuilt to do the same. On or about July 7, 2017, Cenlar issued a detailed work order to its agents Five Brothers and/or Masterbuilt to perform property preservation services at the subject property in an effort to facilitate collection on the subject loan.

Shortly thereafter, Cenlar's agents went to the property. They banged loudly on the front door. Parham was at work at the time, but Parham's 15-year-old minor child, B.M., was home alone. He did not answer the door. He saw multiple individuals congregating outside, not knowing who they were. He feared for his safety. B.M. then heard loud bangs coming from the back door, and then loud booms, so he thought the people were trying to break in. He hid in the basement furnace closet. He then heard a loud crash, and footsteps on the main level, so he went to a computer near the furnace closet and sent Parham an email stating that someone broke in and to come home. Cenlar agents then went to the basement where B.M. was hiding in the closet and began shining flashlights throughout the basement. They opened the furnace closet and flashed their flashlights into the closet, but did not see B.M. and left the basement. At no point did the agents see B.M., nor did they identify themselves. B.M. also never announced his presence.

After B.M. felt he was safe, he left the basement and saw police and his neighbor talking outside. He discovered that the alleged intruders had forcibly broken into the subject property by

3

way of the back door, and had placed a lock on the back door. Parham later arrived home, finding the door broken with screws and door panel on the floor, and discovered her flat-screen television missing. Parham asked the police to break the new lock on her door, but they were unable to, so Parham had to hire a locksmith to break the lock and allow her access to her home.

Parham filed a police report. Defendants did not subsequently communicate with her about the incident, or explain why they changed the locks. She inquired with Cenlar about whether they were responsible, and a Cenlar representative acknowledged that Cenlar had sent representatives to the property to determine if it was vacant. Plaintiffs state that—due to Parham's submission of a loan modification application—Defendants should have known, and did in fact know, that the property was still occupied. She alleges that Defendants did not have the authority or legal right to enter the subject property, nor a license to change locks as required by the Illinois Locksmith Act.

### III. Discussion

#### a. Illinois Consumer Fraud and Deceptive Practices Act

Plaintiffs allege that Defendants engaged in illegal, "unfair" conduct by "dispossess[ing] the Plaintiffs of the subject property without a court order authorizing the same." Compl. ¶116. The elements of a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") are: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 574 (7th Cir. 2012) (internal quotation omitted).

4

Defendants here make two arguments. First, Defendants argue that Plaintiffs are not "consumers" as defined by the ICFA[2] and so lack standing. Plaintiffs concede that they are not consumers but argue that they satisfy the "consumer nexus test." "The courts . . . have generally required ICFA plaintiffs to demonstrate either that they are 'consumers' under the meaning of the statute or that they have satisfied the 'consumer nexus' test." Thakkar v. Ocwen Loan Servicing, LLC, No. 15 CV 10109, 2019 WL 2161544, at *9 (N.D. Ill. May 17, 2019) (test asks in part whether plaintiffs are akin to consumers and whether defendant's conduct involves consumer protection concerns). Plaintiffs assert that their claim "implicates consumer protection concerns." Connecticut Gen. Life Ins. Co. v. Sw. Surgery Ctr., LLC, 349 F. Supp. 3d 718, 725 (N.D. Ill. 2018). In their complaint, Plaintiffs allege that Defendants engage in an "industry-wide practice" to illegally possess properties without consent and cause "substantial injury to consumers generally." Compl. ¶133. At this early stage, that is enough to establish standing to sue under the ICFA. See Frazier v. U.S. Bank Nat. Ass'n, No. 11 C 8775, 2013 WL 1385612, at *4 (N.D. Ill. Apr. 4, 2013) (noting that Plaintiff alleged "that as an established practice Defendants tracked Plaintiff and other borrowers' loans en masse and unlawfully ordered property services during periods when Plaintiff and other borrowers had a right to remain in their homes.").

Second, Defendants argue that Plaintiffs' ICFA claim must fail because Plaintiffs do not allege that there was any contractual relationship or communication—let alone deceptive act—between Plaintiffs and these Defendants. However, as Plaintiffs point out, they need not plead a deceptive act to sustain their ICFA claim. "The Illinois Appellate Court has interpreted the [ICFA] to be disjunctive, allowing separate claims for unfair acts or practices and deceptive acts or practices." Sindles v. Saxon Mortg. Servs., Inc., No. 11 C 7224, 2012 WL 1899401, at *4 (N.D.

---

[2] A consumer is "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e).

Ill. May 22, 2012). Here, Plaintiffs plausibly plead that Five Brothers and Masterbuilt unfairly and illegally broke into their property, potentially constituting an unfair business practice. The ICFA claims survive this motion to dismiss.

### b. Intrusion Upon Seclusion

Plaintiffs bring state law claims of intrusion upon seclusion to recover damages for Defendants' forcible entry into Plaintiffs' home without authorization. The Illinois Supreme Court recognized "the validity of a cause of action for invasion of privacy by intrusion upon seclusion" in Lawlor v. N. Am. Corp. of Illinois. 2012 IL 112530, ¶ 35, 983 N.E.2d 414, 425 ("[T]he tort of intrusion upon seclusion originates from a right of privacy and constitutes one of the four branches of the tort of invasion of privacy found in the Restatement (Second) of Torts.").

Defendants assert that Plaintiffs' intrusion upon seclusion claim is time-barred, because the alleged intrusion occurred in July 2017, and Plaintiffs filed their amended complaint on March 5, 2020. "Illinois courts have not definitively established the proper statute of limitations applicable to intrusion upon seclusion claims." Skiba v. Ill. Cent. R.R. Co., No. 18 C 3381, 2018 WL 6990673, at *2 (N.D. Ill. Dec. 13, 2018). Defendants urge the Court to apply the one-year limitation that governs defamation and right of privacy claims (735 ILCS 5/13-201), or alternatively, the two-year limitation for claims for personal injuries (735 ILCS 5/13-202). Plaintiffs rebut, citing cases from Illinois courts that have declined to apply the one-year limitation. See Skiba, 2018 WL 6990673 at *2 (citing Johnson v. Northshore Univ. Healthsystem Healthport, Inc., No. 1-10-0399, 2011 WL 10069086, at *4 (Ill. App. Ct. Mar. 31, 2011) which "impl[ied] . . . that the catch-all five-year limitations period applied to intrusion upon seclusion").

The Court declines to dismiss the claim on statute of limitations grounds at this time. "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses[.]" Sidney Hillman Health Ctr. of

6

Rochester v. Abbott Labs., Inc., 782 F.3d 922, 928 (7th Cir. 2015). "[T]he statute of limitations is an affirmative defense that need not be anticipated in a complaint." Skiba v. Ill. Cent. R.R. Co., No. 18 C 3381, 2018 WL 6990673, at *2 (N.D. Ill. Dec. 13, 2018) (denying motion to dismiss given "the uncertain state of the law" and "the procedural posture of the case").[3] Defendants may raise the argument later, after further discovery, but the Court will not dismiss the claim as time-barred at this time.

Defendants also argue that Plaintiffs do not adequately plead the claim of intrusion upon seclusion. Specifically, they argue that Plaintiffs have not, and cannot, satisfy the requirement that the intrusion be "intentional." Lawlor, 983 N.E.2d at 424 (citing Section 652B of the Restatement (Second) of Torts, which provides for liability for invasion of privacy if one "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another . . ."). Defendants argue that their entrance into the property was conducted pursuant to a valid foreclosure proceeding after "[Defendant] Lakeview obtained authorization from the Bankruptcy Court to continue the foreclosure proceeding" (Compl. ¶30) and that there is no allegation that they entered with knowledge that the property was occupied.

Even if this element of intention to intrude is necessary to establish the claim, Plaintiffs' complaint is sufficient to survive the motion to dismiss on this issue. In their amended complaint, under a section asserting a claim against all defendants, Plaintiffs allege that "Defendants had actual knowledge that Nikki owned and occupied the subject property" and entered "without

---

[3] Plaintiffs also invoke the "discovery rule" to argue that the limitations period for this claim accrued only when they gained knowledge that Defendants were the entities that performed the property preservation services. See Doe v. Hastert, 2019 IL App (2d) 180250, 133 N.E.3d 1249, 1255-56 (applying "the general statute of limitations applicable to personal-injury claims and the common-law discovery rule."). This underscores for the Court that discovery is appropriate on this issue. Id. at 1256 ("Whether the discovery rule applies is generally a question of fact[.]").

7

authorization[.]" Compl. ¶106; ¶152. Discovery may show these allegations to be false, but taking Plaintiffs' alleged facts as true, the complaint sufficiently alleges knowledge and intent.

### c. Intentional Infliction of Emotional Distress

Finally, Defendants move to dismiss Plaintiffs' claim of intentional infliction of emotional distress ("IIED"). To state an IIED claim, plaintiffs must demonstrate that (1) the conduct involved was truly extreme and outrageous; (2) the actor either intended that his conduct inflict severe emotional distress, or knew that there was at least a high probability that his conduct would cause severe emotional distress and (3) the conduct in fact caused severe emotional distress. A.J. by Julka v. Butler Ill. Sch. Dist. #53, No. 17 C 2849, 2020 WL 3960444, at *3 (N.D. Ill. July 13, 2020) (citing Honaker v. Smith, 256 F.3d 477, 490 (7th Cir. 2001)). Defendants assert that Plaintiffs, as a matter of law, do not satisfy either of the first two elements at this early stage. The Court disagrees.

Defendants compare this case to Schweihs v. Chase Home Finance, LLC, where a mortgage loan borrower sued a lender and property preservation servicer for forcibly breaking into the subject residence. There, the Supreme Court of Illinois affirmed summary judgment against plaintiff, finding that the conduct did not rise to the level of extreme and outrageous. 2016 IL 120041, ¶ 32, 77 N.E.3d 50. However, that case was decided on summary judgment and dealt with facts not alleged here at the motion to dismiss stage, including that: Plaintiff signed a note allowing Defendant to enter the property to make repairs if Plaintiff fell into default, the actors undertook efforts to determine the occupancy of the house for over 45 minutes and found the gas turned off, and the actors removed only one secondary lock. Id. at 64. Here, in contrast, Plaintiffs allege that Defendants entered the property "shortly" after knocking, changed the lock to the only working door to the house, and "knew that forcibly entering Plaintiffs' home and changing the lock would inflict severe emotional distress[.]" Compl. ¶¶38-47; ¶157. In addition, Plaintiffs allege that

8

Defendants broke the back door, leaving screws and a door panel on the floor, and stole their property—specifically, a flat-screen television. Although a close issue, taking Plaintiffs' allegations together, the Court cannot conclude as a matter of law under Rule 12(b)(6) that Plaintiffs could not possibly prove outrageous conduct.

Defendants argue that Plaintiffs fail to show that Defendants intended to cause severe emotional distress, stating, "nowhere in Plaintiff's Amended Complaint is it alleged that Five Brothers knew the subject property was occupied, or that Five Brothers deliberately entered an occupied home." Dkt. 71 at 13-14. Defendants are wrong; Plaintiffs allege that "Defendants had actual knowledge that Nikki owned and occupied the subject property" and entered "without authorization[.]" Compl. ¶¶106, 152. Plaintiffs support that conclusory allegation with alleged facts; Cenlar sent representatives—namely, Defendants—to the subject property after Plaintiffs had recently submitted a loan modification application. Compl. ¶33. While Defendants may ultimately refute Plaintiffs' allegation that they had actual knowledge regarding Plaintiffs' occupation of the property, the allegation in the amended complaint is enough to state a claim that Defendants intended to cause severe emotional distress.

Defendants also raise an affirmative defense, asserting that Plaintiffs bring their IIED claim outside the statute of limitations. IIED claims in Illinois are governed by a two year statute of limitations. 735 ILCS 5/13-202; Benitez v. KFC Nat. Mgmt. Co., 305 Ill. App. 3d 1027, 1032, 714 N.E.2d 1002, 1006 (1999). However, as discussed *supra*, the Court declines to dismiss the complaint as time-barred at this stage.

## IV. Conclusion

Defendants' arguments may prove successful at summary judgment or beyond. However, their motions fail at this early stage. The Court denies the motions in part as to Counts III, V, and VI, and grants the motions in part as to Count IV. See Dkt. 95.

9

The Court notes that certain written documents that are central to this case—like the subject loan contract and pertinent orders from the foreclosure and bankruptcy cases—have not been filed with this Court. If the parties have not already produced these documents pursuant to their mutual disclosure obligations under Fed. R. Civ. P. 26, they shall do so expeditiously.

IT IS SO ORDERED:

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: March 8, 2021