## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NIKKI PARHAM, individually and on behalf of her minor child, B.M., | Case No.1:18-cv-04678 |
| Plaintiffs, | |
| v. | Honorable Charles R. Norgle, Sr. |
| LAKEVIEW LOAN SERVICING, LLC, CENLAR FSB, FIVE BROTHERS MORTGAGE COMPANY SERVICES AND SECURING, INC., and MASTERBUILT CONSTRUCTION, INC. | Magistrate Judge M. David Weisman |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

### DEFENDANT FIVE BROTHERS MORTGAGE COMPANY SERVICES AND SECURING, INC.,'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED COMPLAINT AT LAW

Defendant, FIVE BROTHERS MORTGAGE COMPANY SERVICES AND SECURING, INC., (hereinafter, "Defendant,") by and through its Attorneys, Lori A. Vanderlaan and Fritz V. Wilson of the law firm of Best, Vanderlaan & Harrington, and for its Amended Answer and Affirmative Defenses to the Plaintiff's First Amended Complaint at Law, states as follows:

### Nature of the Action

1.      Plaintiffs bring this action seeking redress for breach of contract, trespass to real property, violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA,") pursuant to 815 ILCS 505/1, et. seq., violations of the Fair Debt Collection Practices Act ("FDCPA,") pursuant to 15 USC §1692, intrusion upon seclusion, intentional infliction of emotional distress, conversion, and negligence.

**ANSWER:** **Defendant makes no answer to the allegations contained in Paragraph 1 because the allegations of the Complaint speaks for itself. Defendant denies and will continue to deny that it is liable to Plaintiff.**

2.      All of Plaintiff's claims stem from Defendants' illegal debt collection activity relating to Nikki's home mortgage loan. Defendants illegally broke into Nikki's home without authorization and damaged Nikki's home.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 2.**

<u>**Jurisdiction and Venue**</u>

3.      Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

**ANSWER:** **Defendant makes no answer to the allegations contained in Paragraph 3 because Paragraph 3 alleges no facts but states a conclusion of law. To the extent Paragraph 3 is construed as alleging facts against this Defendant the same are denied.**

4.      The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §§1367.

**ANSWER:** **Defendant makes no answer to the allegations contained in Paragraph 4 because Paragraph 4 alleges no facts but states a conclusion of law. To the extent Paragraph 4 is construed as alleging facts against this Defendant the same are denied.**

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Plaintiffs reside in this judicial district, Defendants conduct business in this judicial district, and all of the events or omissions giving rise to the claims occurred within this district.

**ANSWER: Defendant makes no answer to the allegations contained in Paragraph 5 because Paragraph 5 alleges no facts but states a conclusion of law. To the extent Paragraph 5 is construed as alleging facts against this Defendant the same are denied.**

## PARTIES

6.     Plaintiffs are natural persons that reside at a property commonly known as 7523 South Ridgeland Avenue, Chicago, IL ("subject property.")

**ANSWER: Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 6 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

7.     Nikki is a is a single mother of two children, whom at all times relevant was employed at Chicago Commons, a not-for-profit social organization that serves under-resourced communities throughout the City of Chicago.

**ANSWER: Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 7 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

8.     BM is Nikki's 15 year old son that suffers from a neurological disorder known as epilepsy.

**ANSWER: Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 8 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

9.     The subject property serves as Nikki's family's principal residence.

**ANSWER:** **Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 9 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

10.     Lakeview Loan Servicing, LLC ("Lakeview,") is a mortgage company based out of Coral Gables, Florida. Lakeview is in the business of extending mortgage loans to consumers across the United States, including consumers in Illinois.  Lakeview is also in the business of acquiring and servicing mortgage loans that were originated by a third party.  Lakeview acquires mortgage loans and services mortgage loans owed by Illinois consumers.  Lakeview does business in Illinois. Lakeview is registered with the Illinois Secretary of State.

**ANSWER:** **Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 10 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

11.     Cenlar FSB ("Cenlar,") is a mortgage loan subservicing company with headquarters located in Ewing, New Jersey. Cenlar services and subservices mortgage loans for third party loan owners. Cenlar services and subservices mortgage loans owed by Illinois consumers.  Cenlar services and subservices mortgage loans owed by Illinois consumers. Cenlar does business in Illinois. Cenlar is registered with the Illinois Secretary of State.

**ANSWER:** **Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 11 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

12.     Five Brothers Mortgage Company Services and Securing ("Five Brothers,") is an asset preservation company with headquarters located in Warren, Michigan. Five Brothers provides property preservation services to mortgage loan servicers.  According to its website, "Five

Brothers consistently provides innovative, regulatory-compliant asset management solutions that save time, eliminate errors, and increase efficiency for residential mortgage servicers nationwide." Five Brothers provides services to mortgage loan servicers that service mortgage loans extended to Illinois consumers and thus does business in Illinois. Five Brothers is registered with the Illinois Secretary of State.

**ANSWER:     Defendant admits that Five Brothers is an asset preservation company with headquarters in Warren, Michigan and that it is in the business of providing property preservation services to mortgage loan servicers subject to all applicable contractual terms and conditions, and that it does business in Illinois and is registered with the Illinois Secretary of State, and that Paragraph 12 purports to quote part of one sentence from its website.  Defendant denies the remaining allegations contained in Paragraph 12 and denies it is liable to Plaintiff.**

13.     Masterbuilt Construction, Inc., ("Masterbuilt,") is an asset preservation company based out of Lombard, Illinois. Masterbuilt provides property preservation services to mortgage loan servicers. Masterbuilt provides property preservation services to mortgage loan servicers that service mortgage loans extended to Illinois consumers. Masterbuilt is registered with the Illinois Secretary of State.

**ANSWER:     Defendant admits that Masterbuilt provides property preservation services but lacks sufficient information to either admit or deny the remaining allegations contained in Paragraph 13 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

## Facts Supporting Causes of Action

14.     On May 29, 2014, Nikki obtained a mortgage loan ("subject loan,") in the amount of $157,003.00 from Sun West Mortgage Company, Inc. ("Sun West,") secured by the subject property.

**ANSWER:     Defendant admits the allegations contained in Paragraph 14.**

15.     BM was not a party to the subject loan.

**ANSWER:     Defendant admits the allegations contained in Paragraph 15.**

16.     Pursuant to the terms of the loan, Nikki was obliged to make monthly principal and interest payments in the initial amount of $772.36 for 30 years.

**ANSWER:     Defendant admits the allegations contained in Paragraph 16.**

17.     Due to a decrease in monthly income, Nikki defaulted on the subject loan.

**ANSWER:     Defendant admits the Plaintiff defaulted on the subject loan but lacks sufficient information to either admit or deny the allegations contained in Paragraph 17 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

18.     In late 2015, after the subject loan was in default, Lakeview acquired the subject loan from Sun West.

**ANSWER:     Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 18 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

19.     As soon as Lakeview acquired the subject loan, it assigned servicing rights for the subject loan to Cenlar.

**ANSWER:** **Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 19 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

20.     Accordingly, Cenlar became the face of the subject loan and was responsible for the day-to-day management and administration of the subject loan.

**ANSWER:** **Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 20 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

21.     In December, 2016 Nikki submitted a complete loan modification application to Cenlar. The loan modification, if granted, would modify the repayment terms of the subject loan and deem Nikki current on the subject loan.

**ANSWER:** **Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 21 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

22.     Despite submitting a complete loan modification application, Cenlar never responded to Nikki's loan modification application.

**ANSWER:** **Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 22 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

23.     On January 13, 2016, Lakeview filed a foreclosure complaint in the Circuit Court of Cook County seeking to foreclose on the subject property, Case No. 2016 CH 00476 ("foreclosure proceeding.")

**ANSWER:** **Defendant admits the allegations contained in Paragraph 23.**

24. On November 30, 2016, in an effort to save her family's home, Nikki filed a Chapter 13 bankruptcy in the Bankruptcy Court for the Northern District of Illinois, Case No. 16-37792.

**ANSWER: Defendant admits that Nikki Parham initiated a Bankruptcy Proceeding in the Bankruptcy Court for the Northern District of Illinois with the stated case number on November 30, 2016 but denies all remaining allegations contained in Paragraph 24 and denies it is liable to the Plaintiff.**

25. By operation of law, Nikki's bankruptcy filing stayed the foreclosure proceeding. See 11 USC sec. 362.

**ANSWER: Defendant makes no answer to the allegations contained in Paragraph 25 because Paragraph 25 alleges no facts but states a conclusion of law. To the extent Paragraph 25 is construed as alleging facts against this Defendant the same are denied.**

26. In February, 2017, BM Underwent brain surgery to treat the subclinical seizures that stem from his epilepsy disorder.

**ANSWER: Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 26 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

27. On March 9, 2017, Nikki filed a Chapter 13 Plan which proposed a repayment plan that would, in pertinent part, 1) recommence contractual monthly payments on the subject loan; and 2) cure the default on the subject loan over 60 months.

**ANSWER: Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 27 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

28.     On April 3, 2017, the Bankruptcy Court confirmed Nikki's Chapter 13 Plan ("Confirmed Plan,") thus binding Lakeview and Cenlar to the terms of the Confirmed Plan.

**ANSWER:     Defendant makes no answer to the allegations contained in Paragraph 28 because Paragraph 28 alleges no facts but states a conclusion of law. To the extent Paragraph 28 is construed as alleging facts against this Defendant the same are denied.**

29.     Due to Nikki's dire financial circumstances, Nikki fell behind on her monthly payments as prescribed by the Confirmed Plan.

**ANSWER:     Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 29 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

30.     As a result, on June 5, 2017, Lakeview obtained authorization from the Bankruptcy Court to continue the foreclosure proceeding.

**ANSWER:     Defendant admits the allegations contained in Paragraph 30.**

31.     The foreclosure proceeding progressed and a sale of the subject property was scheduled for July 28, 2017.

**ANSWER:     Defendant admits the allegations contained in Paragraph 31.**

32.     Prior to the sale date, Cenlar sent Nikki a loan modification application.

**ANSWER:     Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 32 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

33.     On June 19, 2017, in an effort to save her family's home, Nikki submitted a complete loan modification application to Cenlar.

**ANSWER:** **Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 33 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

34.     Upon information and belief, in late 2017, Cenlar employed Five Brothers to facilitate the collection of the subject loan and to perform property preservation services at the subject property, which in turn employed Masterbuilt to do the same.

**ANSWER:** **Defendant makes no answer to the allegations relating to what Cenlar agreed to as said allegations are directed to a Defendant other than Five Brothers. As to the remaining allegations, Defendant admits only that Cenlar retained Five Brothers but denies all remaining allegations contained in Paragraph 34 and denies it is liable to the Plaintiff.**

35.     On or about July 7, 2017, Cenlar issued a detailed work order to its agents, Five Brothers and/or Masterbuilt ("Cenlar's Agents,") to perform specific property preservation services at the subject property in an effort to facilitate collection on the subject loan.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 35.**

36.     Shortly thereafter, Cenlar's agents went to the subject property to carry out Cenlar's work order.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 36.**

37.     At the time Cenlar's agents arrived at the subject property, Nikki was at work and BM was home alone.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 37.**

38.     Upon arrival to the doorstep to the subject property, Cenlar's agents began banging loudly on the front door.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 38.**

10

39.     In response to the banging, BM, not expecting any visitors, went to a nearby window and observed an individual banging on the front door and multiple individuals congregating by the front door and lawn.

**ANSWER:     Defendant denies the allegations contained in Paragraph 39.**

40.     BM, fearing for his safety, did not answer the door or otherwise try to communicate with Cenlar's agents as he did not recognize them and did not know why they were at his home.

**ANSWER:     Defendant denies the allegations contained in Paragraph 40.**

41.     Shortly thereafter, the banging stopped and BM thought Cenlar's agents left the subject property.

**ANSWER:     Defendant denies the allegations contained in Paragraph 41.**

42.     A couple of minutes later, BM heard loud bangs coming from the back door of the subject property.

**ANSWER:     Defendant denies the allegations contained in Paragraph 42.**

43.     BM, fearing for his safety, did not open the back door and believed that Cenlar's agents would leave if nobody answered the back door.

**ANSWER:     Defendant denies the allegations contained in Paragraph 43.**

44.     Shortly thereafter, BM started hearing loud booms coming from the back door.

**ANSWER:     Defendant denies the allegations contained in Paragraph 44.**

45.     At this point, BM believed that Cenlar's agents were trying to break down the back door.

**ANSWER:     Defendant denies the allegations contained in Paragraph 45.**

46.     Fearing for his safety, BM ran to the basement of the subject property, and hid in the furnace closet.

11

**ANSWER:      Defendant denies the allegations contained in Paragraph 46.**

47.      Shortly thereafter, BM heard a loud crash, followed by the sound of footsteps on the main level of the subject property.

**ANSWER:      Defendant denies the allegations contained in Paragraph 47.**

48.      In a state of panic and fright, BM went to a computer near the furnace closet and sent an email to Nikki stating that someone broke into the house and urged Nikki to come home.

**ANSWER:      Defendant admits that BM sent an email to Nikki Parham but denies all remaining allegations contained in Paragraph 48 and denies it is liable to Plaintiff.**

49.      At that point, BM started hearing the voices of Cenlar's agents as they walked around the house.

**ANSWER:      Defendant denies the allegations contained in Paragraph 49.**

50.      At no point after entry into the subject property did Cenlar's agents identify themselves.

**ANSWER:      Defendant denies the allegations contained in Paragraph 50.**

51.      Shortly thereafter, Cenlar's agents went to the basement where BM was hiding in the furnace closet and began shining flashlights throughout the basement.

**ANSWER:      Defendant denies the allegations contained in Paragraph 51.**

52.      At that point, BM believed that Cenlar's agents were looking for him and were going to kill him.

**ANSWER:      Defendant denies the allegations contained in Paragraph 52.**

53.      Cenlar's agents then approached the furnace closet where BM was hiding.

**ANSWER:      Defendant denies the allegations contained in Paragraph 53.**

54.      In a state of terror, BM hid as far back behind the furnace as possible.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 54.**

55. Cenlar's agents opened the furnace closet and flashed their flashlights into the furnace closet.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 55.**

56. Cenlar's agents did not see BM and left the basement.

**ANSWER:** **Defendant denies that "Cenlar's agents" entered the basement as alleged and denies the remaining allegations contained in Paragraph 56, and denies it is liable to Plaintiff.**

57. BM hid in the furnace closet until he can no longer hear any noises in the subject property. After BM believed he was safe, he finally came out of hiding and went upstairs.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 57.**

58. BM looked outside of a window on the main level of the subject property and observed his neighbor talking to police officers right outside the front door of the subject property.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 58.**

59. BM could not open the front door so he told to the police officers to meet him at the back door of the subject property.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 59.**

60. When BM got to the back door, he discovered that Cenlar's agents had forcibly broke into the subject property by breaking the back door and that Cenlar's agents had placed a lock on the back door.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 60.**

61. Shortly thereafter, Nikki arrived at the subject property and discovered the following: 1) police at her home; 2) BM, in a state of extreme emotional distress, 3) a lock on the

back door that restricted Nikki's access to her home, 4) open drawers and cabinets, 5) a broken back door with screws and door panel on the floor; and 6) a missing flat-screen television.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 61.**

62.     Realizing that she could not enter the subject property, Nikki solicited the help of the police officers on site to break the lock that Cenlar's agents placed on the back door.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 62.**

63.     The police tried to break the lock on the back door but were unable to. Accordingly, Nikki was forced to hire a locksmith to break the lock on the back door so she can access her home.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 63.**

64.     After obtaining access to her home, Nikki filed a police report for the burglary / forcible entry that was committed by Cenlar's agents.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 64.**

65.     Defendants did not leave any message or communication at the subject property notifying Plaintiffs of their identities or the reason they changed the locks, leaving Plaintiffs to wonder if they were in imminent danger of a future break in.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 65.**

66.     Shortly after the break-in, Nikki called Cenlar to inquire if Cenlar had anything to do with the break-in.

**ANSWER:** **Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 66 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

14

67.     In response to Nikki's inquiry, a Cenlar representative acknowledged that Cenlar sent representatives to the subject property in an effort to determine if the subject property was vacant.

**ANSWER:     Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 67 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

68.     Cenlar knew or should have known that the subject property was not vacant because Nikki had recently submitted a loan modification application, which indicated the property was occupied.

**ANSWER:     Defendant denies the allegations contained in Paragraph 68.**

69.     Up until the time the Cenlar representative told Nikki that it was Cenlar that sent representatives to the subject property, Plaintiffs did not know who broke into their home.

**ANSWER:     Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 69 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

70.     At all times relevant, Nikki was the legal owner of the subject property.

**ANSWER:     Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 70 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

71.     At all times relevant, the subject property served as Plaintiffs' principal residence and family home.

**ANSWER:** **Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 71 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

72. At all times relevant, the subject property was fully furnished.

**ANSWER:** **Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 72 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

73. At all times relevant, Defendants did not have authority to enter the subject property.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 73.**

74. At all times relevant, Defendants did not notify Plaintiffs that it would be sending representatives to the subject property to determine if the subject property was vacant.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 74.**

75. At all times relevant, Defendants did not have a legal right to enter the property.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 75.**

76. At all times relevant, Lakeview had a consensual agency relationship with Cenlar whereby Lakeview (as the principal) had the right to control and direct the activities of Cenlar, and Cenlar had the authority to act on behalf of Lakeview. Lakeview, as the principal of Cenlar, is liable for the acts of Cenlar and Cenlar's agents.

**ANSWER:** **Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 76 and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

16

77. At all times relevant, Cenlar had a consensual agency relationship with Five Brothers whereby Cenlar (as the principal) had the right to control and direct the activities of Five Brothers, and Five Brothers had the authority to act on behalf of Cenlar. Cenlar, as the principal of Five Brothers, is liable for the acts of Five Brothers and its agents.

**ANSWER: Objection. The allegations contained in Paragraph 77 do not allege facts but state a legal conclusion which requires no response. To the extent Paragraph 77 alleges any facts against the Defendant, Five Brothers, said allegations are denied and Defendant denies it is liable to the Plaintiff.**

78. At all times relevant, Five Brothers had a consensual agency relationship with Masterbuilt whereby Five Brothers (as the principal) had the right to control and direct the activities of Masterbuilt, and Masterbuilt had the authority to act on behalf of Five Brothers.

**ANSWER: Objection. The allegations contained in Paragraph 78 do not allege facts but state a legal conclusion which requires no response. To the extent Paragraph 78 alleges any facts against the Defendant, Five Brothers, said allegations are denied and Defendant denies it is liable to the Plaintiff.**

79. Upon Information and Belief, Defendants do not have a license to change locks as required by the Illinois Locksmith Act.

**ANSWER: Defendant lacks sufficient information to either admit or deny the allegations contained in Paragraph 79 as to whether "Defendants" have a license to change locks, and therefore neither admits nor denies the same but demands strict proof thereof, and denies it is liable to the Plaintiff.**

**Plaintiff's Damages**

80. Plaintiffs have suffered significant damages that were proximately caused by Defendants' conduct.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 80.**

81. As a result of Defendants' conduct, Plaintiffs suffered extreme emotional distress, anxiety, mental anguish, and pain and suffering resulting from a) the constant fear that their home will be broken into again, and b) the deprivation of the sense of security and safety in their home.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 81.**

82. As a result of Defendants' conduct, Plaintiffs lost access to their home for a limited period of time.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 82.**

83. As a result of Defendants' conduct, Plaintiffs permanently lost the sense of security and safety in their home.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 83.**

84. As a result of Defendants' conduct, Plaintiffs permanently lost the enjoyment of their home.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 84.**

85. As a result of Defendants' conduct, Plaintiffs permanently lost the comfort of their home.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 85.**

86. As a result of Defendants' conduct, Plaintiffs suffered extended loss of sleep resulting from nightmares involving break-ins to their home.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 86.**

87.     As a result of Defendants' conduct, Plaintiff's back door was significantly damaged.

**ANSWER:     Defendant denies the allegations contained in Paragraph 87.**

88.     As a result of Defendants' conduct, Nikki suffered out of pocket expenses incurred for 1) hiring a locksmith to break the lock on the back door, 2) fixing the damage to the back doors; and 3) purchasing a new lock for the back door.

**ANSWER:     Defendant denies the allegations contained in Paragraph 88.**

89.     As a result of Defendants conduct, Plaintiffs expended significant time and energy fixing the damaged door and replacing the lock on the back door.

**ANSWER:     Defendant denies the allegations contained in Paragraph 89.**

90.     As a result of Defendants' conduct, Plaintiffs suffered public humiliation and embarrassment arising from the police presence at their home.

**ANSWER:     Defendant denies the allegations contained in Paragraph 90.**

91.     As a result of Defendants' conduct, Nikki suffered the loss of income. Specifically, Nikki took 3 days off work after the break-in to stay home and comfort BM, as he was extremely traumatized by the break-in.

**ANSWER:     Defendant denies the allegations contained in Paragraph 91.**

92.     As a result of Defendants' conduct, Plaintiffs were permanently deprived of their flat screen television.

**ANSWER:     Defendant denies the allegations contained in Paragraph 92.**

WHEREFORE, the Defendant, FIVE BROTHERS, requests judgment in its favor and against the Plaintiff and that costs be awarded.

## COUNT I – BREACH OF CONTRACT (NIKKI AGAINST LAKESHORE)

**Defendant, Five Brothers, makes no response to the allegations contained in Count I as the allegations contained in Count I are not directed against the Defendant, Five Brothers. To the extent any allegations contained in Count I are construed against Defendant, Five Brothers, they are denied. Defendant Five Brothers further denies and continues to deny it is liable to Plaintiffs.**

## COUNT II – TRESPASS TO REAL PROPERTY

## (NIKKI AGAINST ALL DEFENDANTS)

**Count II is directed at all Defendants collectively which is an impermissible pleading format. Without waiving objection to the same, this defendant, Five Brothers, answers Count II only for itself. Its answer should not be construed to be an answer admitting or denying any allegation directed at any other defendant.**

104.    Plaintiffs restate Paragraphs 1 through 92 as fully stated herein.

**ANSWER:    Defendant, Five Brothers, restates and realleges its Answer to Paragraphs 1 through 92 as though fully set forth herein.**

105.    At all times relevant, Nikki owned the subject property and had a legal right to exclusive possession of the subject property.

**ANSWER:    Defendant denies the allegations contained in Paragraph 105.**

106.    Defendants had actual knowledge that Nikki owned and occupied the subject property.

**ANSWER:    Defendant denies the allegations contained in Paragraph 106.**

107.    Without consent or a right to possession, Defendants forcibly entered and assumed dominion and control of the subject property.

**ANSWER:    Defendant denies the allegations contained in Paragraph 107.**

108.    Without consent or a right to possession, Defendants placed a lock on the back door of the subject property, thus depriving Nikki of access to the subject property.

20

**ANSWER:     Defendant denies the allegations contained in Paragraph 108.**

109.    Defendants' forced entry and trespass on the subject property interfered with Nikki's possession, ownership, use, and enjoyment of the subject property.

**ANSWER:     Defendant denies the allegations contained in Paragraph 109.**

110.    Upon information and belief, it is Defendants' normal business practice to ignore possessory and homeownership rights of homeowners, and to illegally take possession of properties without consent or a court order, in conscious disregard of the rights of homeowners.

**ANSWER:     Defendant denies the allegations contained in Paragraph 110.**

111.    As pled above, Nikki was severely harmed by Defendants' conduct.

**ANSWER:     Defendant denies the allegations contained in Paragraph 111.**

Wherefore, Five Brothers requests Judgment in its favor and against the Plaintiffs and that costs be awarded.

## Counts III – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND

## DECEPTIVE BUSINESS PRACTICES ACT

## (PLAINTIFFS AGAINST ALL DEFENDANTS)

**Count III is directed at all Defendants collectively which is an impermissible pleading format. Without waiving objection to the same, this defendant, Five Brothers, answers Count III only for itself. Its answer should not be construed to be an answer admitting or denying any allegation directed at any other defendant.**

112.    Plaintiff's Restate Paragraphs 1 through 92 as though fully stated herein.

**ANSWER:     Defendant, Five Brothers, restates and realleges its answers to the prior paragraphs of the First Amended Complaint as though fully set forth herein.**

113.    Plaintiffs meet the IFCA definition of "consumer" and "person."

**ANSWER:     Objection. The allegations contained in Paragraph 113 do not allege facts but state a legal conclusion which requires no response. To the extent Paragraph 160 alleges any**

21

**facts against the Defendant, Five Brothers, said allegations are denied and Defendant denies it is liable to the Plaintiff.**

114. Defendants violated IFCA by employing unfair and deceptive acts and practices against Plaintiffs.

**ANSWER:    Defendant denies the allegations contained in Paragraph 114.**

115. Defendants specialize in mortgage lending, servicing, debt collection, property preservation, and the expedited turnover of real property to satisfy defaulted mortgage debt. These actions occur in the course of conduct involving trade or commerce.

**ANSWER:    Defendant denies the allegations contained in Paragraph 115.**

**a.    Unfairness and Deception**

116. It was unfair for Defendants to dispossess the Plaintiffs of the subject property without a court order authorizing the same.

**ANSWER:    Defendant denies that Plaintiff was "dispossessed," of property and denies the allegations contained in Paragraph 116.**

117. It was unfair for Defendants to employ self-help and take possession of the subject property outside the judicial process mandated by the Illinois Mortgage Foreclosure Law ("IMFL,") (defining possessory rights and the prohibition against harassment or intimidation to compel occupants to abandon mortgaged property."

**ANSWER:    Objection. The allegations contained in Paragraph 117 do not allege facts but state a legal conclusion which requires no response. To the extent Paragraph 117 alleges any facts against the Defendant, Five Brothers, said allegations are denied and Defendant denies it is liable to the Plaintiff.**

118.    It was unfair for the Defendants to lock the Plaintiffs out of their home in an effort to force them to "give up," possession of the subject property.

**ANSWER:    Defendant denies "lock[ing] Plaintiffs out of their home," denies making efforts to "force them to 'give up,'" their home, and denies the allegations contained in Paragraph 118.**

119.    It was unfair for Defendants to change the lock of the back door of the subject property without having a valid license required by the Illinois Locksmith Act.

**ANSWER:    Objection. The allegations contained in Paragraph 119 do not allege facts but state a legal conclusion which requires no response. To the extent Paragraph 119 alleges any facts against the Defendant, Five Brothers, said allegations are denied and Defendant denies it is liable to the Plaintiff.**

120.    It was unfair for Defendants to forcibly enter Plaintiff's home without legal authorization to do the same.

**ANSWER:    Defendant denies that it forcibly entered Plaintiff's home without legal authorization and denies the allegations contained in Paragraph 120.**

121.    It was unfair for Defendants to cause damage to the back door of the subject property and not compensate Nikki for the damage caused by Defendants.

**ANSWER:    Defendant denies causing damage to the back door of the subject property, and denies the allegations contained in Paragraph 121.**

122.    It was unfair for Defendants to steal Plaintiff's flat-screen television and not compensate Plaintiffs for the same.

**ANSWER:    Defendant denies having stolen Plaintiff's flat screen television, and denies the allegations contained in Paragraph 122.**

123.     Defendants' conduct offends public policy as it demonstrates an industry-wide practice of maximizing profits by ignoring the possessory rights of homeowners in violation of the law, expediting the foreclosure process by circumventing the law, and attempting to profit from the expedited sale of real property.

**ANSWER:     Defendant denies the conduct alleged and denies the allegations contained in Paragraph 123.**

124.     It was unfair and deceptive for Lakeview to mislead Nikki into believing that Lakeview may modify the subject loan when Lakeview had no intent to modify or even consider a modification of the subject loan.

**ANSWER:     Defendant, Five Brothers, makes no response to the allegations contained in Paragraph 124 as the allegations contained in Paragraph 124 are not directed against the Defendant, Five Brothers. To the extent any allegations contained in Paragraph 124 are directed against Defendant, Five Brothers, then Defendant, Five Brothers denies said allegations and denies it is liable to Plaintiff.**

125.     Plaintiffs had no choice but to submit to Defendants' conduct. Specifically, Plaintiffs had no control over 1) the sham loan modification process; 2) the changing of the lock; 3) the destruction to the subject property; and 4) their ability to enter their home after Defendants illegally changed the locks.

**ANSWER:     Defendant denies the allegations contained in Paragraph 125.**

126.     It was unfair and deceptive for Defendants to erroneously deem the subject property "vacant," or "abandoned," when Defendants had actual knowledge that the subject property was occupied as the loan modification applications submitted by Nikki expressly stated that the subject property was occupied.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 126.**

127. It was unfair and deceptive for Defendants to erroneously deem the property "vacant," or "abandoned," despite the fact that the subject property was conspicuously occupied and well maintained.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 127.**

128. Defendants intended that the Plaintiffs would rely on their unfair and deceptive acts; their overall scheme was designed to thwart Nikki's attempt to keep her home and designed to buffalo Nikki into giving up her home without having to complete the foreclosure process.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 128.**

129. Nikki did rely upon Defendant's unfair and deceptive acts by completing the loan modification application that Lakeview and/or Cenlar had no intention of granting.

**ANSWER:** **Defendant denies it engaged in unfair and deceptive acts alleged or otherwise and thus denies the allegations contained in Paragraph 129.**

130. Defendants were hoping that their illegal conduct would ultimately drive the Plaintiffs out of their home so Defendants could take possession without having to complete the lengthy foreclosure process. Defendants' objective was to profit from an expedited sale of the subject property.

**ANSWER:** **Defendant denies it engaged in illegal conduct or other conduct alleged and thus denies the allegations contained in Paragraph 130.**

131. Defendants' overall conduct towards Plaintiffs was oppressive and against public policy.

**ANSWER:** **Defendant denies it engaged in the conduct alleged and further denies the allegations contained in Paragraph 131.**

132. As pled above, Plaintiffs were severely harmed by Defendants' conduct.

**ANSWER: Defendant denies it engaged in the conduct alleged and further denies the allegations contained in Paragraph 132.**

133.    Defendants' conduct causes substantial injury to consumers generally because:

      i.      consumers reasonably expect to be safe and secure in their own property;

      ii.      consumers reasonably expect mortgage companies to communicate with them truthfully and accurately regarding the occupancy status of a home or any claims of vacancy or abandonment;

      iii.      consumers reasonably expect mortgage companies to evaluate their loan modification applications in good faith;

      iv.      consumers reasonably expect companies to follow state and federal law and their own guidelines;

      v.      consumers reasonably expect that companies will not take illegal action to expedite a foreclosure and bully consumers from their property;

      vi.      consumers reasonably expect companies to make honest efforts to resolve a dispute instead of misrepresenting facts and ignoring requests and inquiries;

      vii.      consumers reasonably expect mortgage companies to honor and respect laws designed to protect consumers;

      viii.      consumers reasonably expect property preservation companies to not forcibly break into their homes, change the locks, and steal their personal property.

**ANSWER: Defendant denies the allegations contained in Paragraph 133, including subparagraphs (i) through (viii).**

134.    An award of punitive damages is appropriate because Defendants' conduct was outrageous, willful, wanton, showed a reckless disregard for the rights of the Plaintiffs, and was designed to take advantage of a vulnerable family.

**ANSWER: Defendant denies its engaged in the conduct alleged and further denies the allegations contained in Paragraph 134.**

26

WHEREFORE, the Defendant, Five Brothers, asks that Judgment be entered in its favor, and against Defendant, and that costs be awarded.

### Count IV – VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT

### (PLAINTIFFS AGAINST ALL DEFENDANTS)

**Defendant, Five Brothers, makes no response to the allegations contained in Count IV as Count IV has been dismissed.**

### Count V – INTRUSION UPON SECLUSION

### (PLAINTIFFS AGAINST ALL DEFENDANTS)

**Count V is directed at all Defendants collectively which is an impermissible pleading format. Without waiving objection to the same, this defendant, Five Brothers, answers Count V only for itself. Its answer should not be construed to be an answer admitting or denying any allegation directed at any other defendant.**

150.    Plaintiffs restate Paragraphs 1 through 92 as fully stated herein.

**ANSWER:    Defendant Five Brothers restates its response to Paragraphs 1 through 92 above as though fully set forth herein.**

151.    To establish a claim for intrusion upon seclusion, Plaintiffs must establish 1) there was an unauthorized intrusion into seclusion, 2) the intrusion would be highly offensive to a reasonable person; 3) the matter intruded upon was private, and 4) the intrusion caused anguish and suffering. Maremont v. Susan Fredman Design Group, Ltd., 2011 U.S. Dist. LEXIS 140446, at *20 (N.D. Ill. 2011).

**ANSWER:    Objection. The allegations contained in Paragraph 151 do not allege facts but state a legal conclusion which requires no response. To the extent Paragraph 151 alleges any facts against the Defendant, Five Brothers, said allegations are denied and Defendant denies it is liable to the Plaintiff.**

152.   Defendants intruded into Plaintiffs' seclusion by forcibly entering Plaintiffs' home without authorization and changing the lock.

**ANSWER:   Defendant denies the allegations contained in Paragraph 152.**

153.   Defendants' conduct was highly offensive and objectionable to a reasonable person.

**ANSWER:   Defendant denies the allegations contained in Paragraph 153.**

154.   As pled above, Plaintiffs suffered significant mental anguish and suffering as a result of Defendants' conduct.

**ANSWER:   Defendant denies the allegations contained in Paragraph 154.**

WHEREFORE, the Defendant, Five Brothers, asks that Judgment be entered in its favor, and against Defendant, and that costs be awarded.

### Count VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (PLAINTIFFS AGAINST ALL DEFENDANTS)

**Count VI is directed at all Defendants collectively which is an impermissible pleading format. Without waiving objection to the same, this defendant, Five Brothers, answers Count VI only for itself. Its answer should not be construed to be an answer admitting or denying any allegation directed at any other defendant.**

155.   Plaintiffs restate Paragraphs 1 through 92 as fully stated herein.

**ANSWER:   Defendant Five Brothers restates its response to Paragraphs 1 through 92 above as though fully set forth herein.**

156.   To state a claim for intentional infliction of emotional distress, plaintiffs must establish that 1) the defendants' conduct was extreme and outrageous, 2) the defendants either intended to inflict sever emotional distress or knew that there was a high probability that their conduct would do so; and 3) the defendants' conduct actually caused severe emotional distress. Honaker v. Smith, 256 F. 3d 477, 490 (7th Cir. 2001).

**ANSWER:**    **Objection. The allegations contained in Paragraph 156 do not allege facts but state a legal conclusion which requires no response. To the extent Paragraph 156 alleges any facts against the Defendant, Five Brothers, said allegations are denied and Defendant denies it is liable to the Plaintiff.**

157.    Defendants are liable for intentional infliction of emotional distress, because 1) forcibly entering Plaintiffs' home and changing the lock without authorization was extreme and outrageous, 2) Defendants knew that forcibly entering Plaintiffs' home and changing the lock would inflict severe emotional distress on Plaintiffs; and 3) Defendants' conduct actually caused Plaintiffs severe emotional distress.

**ANSWER:**    **Defendant denies the allegations contained in Paragraph 157.**

158.    At very minimum, Defendants are liable for negligent infliction of emotional distress.

**ANSWER:**    **Defendant denies the allegations contained in Paragraph 158.**

WHEREFORE, the Defendant, Five Brothers, asks that Judgment be entered in its favor, and against Defendant, and that costs be awarded.

### Count VII – CONVERSION (AGAINST FIVE BROTHERS AND MASTERBUILT)

**Count VII is directed at all Defendants collectively which is an impermissible pleading format.  Without waiving objection to the same, this defendant, Five Brothers, answers Count VII only for itself.  Its answer should not be construed to be an answer admitting or denying any allegation directed at any other defendant.**

159.    All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**ANSWER:**    **Defendant, Five Brothers, restates and realleges its answers to the prior paragraphs of the First Amended Complaint as though fully set forth herein.**

160.    Conversion is "the unauthorized deprivation of property from the person entitled to its possession." Law v Yanni (in re Estate of Yanni), 400 Ill. Dec. 721, 48 N.E.3d 1161, 1166, 2015 IL App. (2d) 150108 (Ill. App. Ct. 2015).

**ANSWER:    Objection. The allegations contained in Paragraph 160 do not allege facts but state a legal conclusion which requires no response. To the extent Paragraph 160 alleges any facts against the Defendant, Five Brothers, said allegations are denied and Defendant denies it is liable to the Plaintiff.**

161.    Conversion's essence is "the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held."

**ANSWER:    Objection. The allegations contained in Paragraph 161 do not allege facts but state a legal conclusion which requires no response. To the extent Paragraph 161 alleges any facts against the Defendant, Five Brothers, said allegations are denied and Defendant denies it is liable to the Plaintiff.**

162.    A cause of action for conversion requires "(1) the unauthorized and wrongful assumption of control, dominion, or ownership by the defendant over the personal property of another, 2) the plaintiff's right in the property; 3) the Plaintiff's absolute and unconditional right to immediate possession of the property; and 4) a demand for possession of the property." Id.

**ANSWER:    Objection. The allegations contained in Paragraph 162 do not allege facts but state a legal conclusion which requires no response. To the extent Paragraph 162 alleges any facts against the Defendant, Five Brothers, said allegations are denied and Defendant denies it is liable to the Plaintiff.**

163.    Cenlar's agents, without authority or consent, assumed control, dominion, or ownership over Nikki's personal property, namely her flat-screen television.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 163.**

164.    Nikki has an immediate, absolute and unconditional right to possession to her personal property.

**ANSWER:** **Defendant admits that Plaintiff has a right to possession of her personal property but denies the taking of any personal property and denies all remaining allegations contained in Paragraph 164 and denies it is liable to Plaintiff.**

165.    Cenlar's agents destroyed or remained in unlawful possession of Nikki's personal property.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 165.**

166.    Nikki demanded the return of her personal property from Cenlar's agents, or a demand of her personal property would be futile because Cenlar's agents sold or otherwise disposed of Nikki personal property.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 166.**

167.    Cenlar's agents have made no attempt to replace or return Nikki's personal property or offer to pay the equivalent monetary value.

**ANSWER:** **Defendant, Five Brothers, admits that it has not attempted to replace or return or pay Nikki Parham for alleged personal property as it did not take personal property from Nikki Parham, and further denies all remaining allegations contained in Paragraph 167 and denies it is liable to Plaintiff.**

168.    Cenlar's agents' actions proximately caused the loss of Nikki's personal property.

**ANSWER:** **Defendant denies the allegations contained in Paragraph 168.**

Wherefore, Five Brothers requests Judgment in its favor and against the Plaintiff and that costs be awarded.

## Count VIII– NEGLIGENCE

## (AGAINST FIVE BROTHERS AND MASTERBUILT)

169.    Plaintiffs restate Paragraphs 1 through 92 as fully stated herein.

**ANSWER:    Defendant, Five Brothers, restates and realleges Paragraphs 1 through 92 as though fully set forth herein.**

170.    Cenlar's agents voluntarily exceeded control and dominion over the subject property and Plaintiffs' personal property. Once a party voluntarily undertakes to perform a service, it must do so in a manner that does not increase the risk of harm to the person affected by the undertaking.

**ANSWER:    Defendant denies the allegations contained in Paragraph 170, admits to only those duties imposed by law, denies the breach of any duty, and denies it is liable to Plaintiff.**

171.    Cenlar's agents took affirmative steps to control access to and possession of the subject property by changing the locks, restricting access for a period of time, and exercising dominion and control over the personal property therein.

**ANSWER:    Defendant denies the allegations contained in Paragraph 171.**

172.    Cenlar's agents breached their duty to take reasonable steps to protect the subject property, comply with the law, or follow the practices and procedures within their own manuals and work order guidelines.

**ANSWER:    Defendant denies the allegations contained in Paragraph 172.**

173.    Cenlar's agents breached their duty by a) failing to protect or secure the subject property; b) violating the law; c) failing to allow their own formalized procedures and d) failing to use reasonable care when "securing," the subject property.

**ANSWER:    Defendant denies the allegations contained in Paragraph 173, including subparagraphs (a) through (d).**

174.    Cenlar's agents breached their duty to act prudently by contributing to and enabling the destruction of the subject property and Plaintiffs' personal property and by failing to prevent any loss or destruction after voluntarily exercising control and dominion over the subject property.

**ANSWER:    Defendant denies the allegations contained in Paragraph 174.**

175.    It was reasonably foreseeable that unilaterally taking control and failing to take basic step [sic.] to protect the subject property violated the law and Cenlar's agents own procedures.

**ANSWER:    Defendant denies the allegations contained in Paragraph 175.**

176.    It was reasonably foreseeable that taking dominion and control of the subject property and actively restricting Plaintiffs' access to the subject property would damage Plaintiffs.

**ANSWER:    Defendant denies the allegations contained in Paragraph 176.**

177.    Cenlar's agents were aware that their actions would likely result in injury to Plaintiffs, but willfully ignored their duty of reasonable care. Cenlar's agents acted with such gross and willful negligence as to indicate willful and wanton disregard of Plaintiff's rights.

**ANSWER:    Defendant denies the allegations contained in Paragraph 177.**

178.    Cenlar's agents' actions proximately caused damages to the subject property and Plaintiffs.

**ANSWER:    Defendant denies the allegations contained in Paragraph 178.**

179.    As pled above, Plaintiffs were severely harmed by Cenlar's agents' conduct.

**ANSWER:    Defendant denies the allegations contained in Paragraph 179.**

Wherefore, Five Brothers requests Judgment in its favor and against the Plaintiff and that costs be awarded.  Five Brothers further demands Trial by Jury.

## **AFFIRMATIVE DEFENSES**

NOW COMES the Defendant, FIVE BROTHERS MORTGAGE COMPANY SERVICES AND SECURING, INC., and pleading in the alternative and without waiver to its

previous denials, state the following for its Affirmative Defenses to the Plaintiff's First Amended Complaint at Law.

**FIRST AFFIRMATIVE DEFENSE – CONTRIBUTORY NEGLIGENCE**
**(Directed to Plaintiff Nikki Parham as to Count VIII – Negligence)**

Defendant Five Brothers has denied and continues to deny any and all claims made by Plaintiff, and denies that it is required to raise the following defense in the affirmative, but this defense is being raised in the alternative so as to prevent waiver:

1.      At all times relevant, the Plaintiff, Nikki Parham, owed a duty of reasonable care to act in a reasonable and careful manner.

2.      Plaintiff, Nikki Parham, breached said duty of reasonable care to act in a reasonable and careful manner in one or more of the following ways:

      a.      Failed to communicate adequately with her lending institution,

      b.      Failed to fulfill her financial obligations to her lending institution or acquire a timely extensions,

      c.      Knowingly reported a burglary to the Chicago police when she knew or should have known that neither she nor BM were the victims of a burglary,

      d.      Engaged in behavior resulting in the need to inspect the property,

      e.      Was otherwise careless and negligent,

3.      If plaintiffs were injured, which is denied, one or more the foregoing negligent acts and / or omissions were the proximate cause of the Plaintiff's claimed injuries and damages.

4.      Defendant reserves the right to supplement or amend this Affirmative Defense as additional facts become known.

WHEREFORE, the Defendant, FIVE BROTHERS, prays that this Court find that Plaintiff was more than 50% at fault in proximately causing her own alleged injuries and

damages, and bar the Plaintiff from any recovery on her Complaint at Law, or in the alternative, that any judgment in Plaintiff's favor, which is denied and will continue to be denied, be reduced by an amount that is commensurate with Plaintiff's degree of contributory fault in causing Plaintiff's own injuries and damages.

## SECOND AFFIRMATIVE DEFENSE – FAILURE TO MITIGATE
### (Directed to both Plaintiffs as to All Remaining Counts)

Defendant Five Brothers has denied and continues to deny any and all claims made by Plaintiff, and denies that it is required to raise the following defense in the affirmative, but this defense is being raised in the alternative so as to prevent waiver:

1.     At all times relevant hereto, Plaintiffs had a duty to mitigate damages claimed.

2.     Plaintiff's damages are barred by any failure to mitigate.

3.     If Plaintiff failed to take reasonable steps in obtaining medical treatment, or if Plaintiff failed to take reasonable steps in attempting to acquire employment, then Plaintiff is barred from claiming damages caused by Plaintiff's failure to mitigate.

WHEREFORE, the Defendant, FIVE BROTHERS, requests that Judgment be entered in its favor and that costs be awarded.

## THIRD AFFIRMATIVE DEFENSE – STATUTE OF LIMITATIONS
### (Directed to Both Plaintiffs as to Count VIII – Negligence)

Defendant Five Brothers has denied and continues to deny any and all claims made by Plaintiff, and denies that it is required to raise the following defense in the affirmative, but this defense is being raised in the alternative so as to prevent waiver:

1.     Plaintiff has alleged a claim for negligence for alleged personal injuries against the Defendants in this matter including Defendant, Five Brothers.

2.      Negligence is a state law claim over which this Court has supplemental jurisdiction and should therefore apply Illinois law.

3.      735 ILCS 5/13-202 provides that actions for damages for an injury to the person are to be commenced within two years after the date said actions accrued. 735 ILCS 5/13-202.

4.      Plaintiff contends her First Amended Complaint at Law that the events giving rise to her Negligence claim occurred on, or shortly after, July 7, 2017.

5.      Plaintiff filed her First Amended Complaint at Law against Five Brothers on March 5, 2020.

6.      Plaintiff failed to comply with the applicable statute of limitations.

7.      Plaintiff's claim for negligence is therefore barred.

WHEREFORE, the Defendant, FIVE BROTHERS, requests Judgment in its favor and against the Plaintiff, and that costs be awarded.

### FOURTH AFFIRMATIVE DEFENSE – LACK OF STANDING
### (Directed to both Plaintiffs as to All Remaining Counts)

Defendant Five Brothers has denied and continues to deny any and all claims made by Plaintiff, and denies that it is required to raise the following defense in the affirmative, but this defense is being raised in the alternative so as to prevent waiver:

1.      Defendant, Five Brothers, raises a lack of standing affirmative defense against Plaintiff in order to prevent any argument that an Affirmative Defense of Lack of Standing has been waived. Defendant, Five Brothers, reserves the right to supplement and amend this Affirmative Defense in the future should additional facts and information become available through discovery and investigation.

WHEREFORE, the Defendant, FIVE BROTHERS, requests judgment in its favor and against the Plaintiff and that costs be awarded.

36

## FIFTH AFFIRMATIVE DEFENSE – SETOFF
### (Directed to Both Plaintiffs as to All Remaining Counts)

The Defendant, Five Brothers, has denied and continues to deny any and all claims made by the Plaintiff, and deny that it is required to raise the following defense in the affirmative, but this defense is being raised in the alternative so as to prevent waiver.

1.     Defendant, has denied and continues to deny any and all claims made by Plaintiffs, and denies it is required to raise the following defenses in the affirmative, but raises these defenses in the alternative pursuant to 735 ILCS 5/2-613 and *Thornton v. Garcini*, No. 107028, 2009 WL 3471065, 2009 Ill LEXIS 1927 (October 29, 2009) so as to prevent waiver.  Further, this defense applies to all Counts of Plaintiff's First Amended Complaint at Law.

2.     "A plaintiff may…receive only one full compensation for his or her injuries, and double recovery for the same injury is not allowed." *Thornton v. Garcini*, Illinois Supreme Court No. 107028, 2009 WL 3471065, 2009 Ill LEXIS 1927 (October 29, 2009) citing *Saichek v. Lupa*, 204 Ill.2d 127 (IL 2003).

3.     Should any other individual or entity become party to this litigation, and should such party reach a settlement with Plaintiffs and/or their successors, heirs, or assigns, Defendant, Five Brothers, claims a setoff in the amount of such settlement pursuant to the single-recovery rule.

WHEREFORE, Defendant, Five Brothers, prays for an order reducing any verdict entered in favor of Plaintiffs in an amount equal to the sum he has already received or will receive in the future in settlement of any claims stemming from the incident complained of in Plaintiff's First Amended Complaint.

## SIXTH AFFIRMATIVE DEFENSE – CONSENT
### (Directed to Nikki Parham as to Count II, Trespass, of First Amended Complaint)

The Defendant, Five Brothers, has denied and continues to deny any and all claims made by the Plaintiff, and deny that it is required to raise the following defense in the affirmative, but this defense is being raised in the alternative so as to prevent waiver.

1.      Plaintiff alleges that her home was wrongfully entered and that an alleged trespass occurred on her property due to the actions of "Cenlars Agents," which is denied and will continue to be denied.

2.      If any person entered the property as alleged, they did so after receiving the consent of an occupant of the premises.

3.      If any person entered the boundary of the premises as alleged they did so pursuant to authority that Nikki Parham herself agreed to.

4.      In the alternative, based upon the consent of the owner and/or occupant, there was no trespass into the home or onto the property of the Plaintiff.

5.      Defendant reserves the right to supplement or amend this Affirmative Defense as additional facts become known.

WHEREFORE, Defendant, FIVE BROTHERS requests that Judgment be entered in its favor and against the Plaintiff and that costs be awarded.

## SEVENTH AFFIRMATIVE DEFENSE–NO JOINT AND SEVERAL LIABILITY, 2-1117
### (Directed to Both Plaintiffs as to Count VIII, Negligence)

NOW COMES the Defendant, Five Brothers, and pleading in the alternative and without prejudice to any of his previous denials, for its Seventh Affirmative Defense states as follows:

1.      If Plaintiff sustained injuries and damages as alleged, which Defendant, Five Brothers, denies and continues to deny and if Five Brothers is found liable to Plaintiff, which it

denies and continues to deny, then its responsibility in causing the alleged injury to the Plaintiff was less than 25% in comparison to the conduct of the Plaintiff and all other tortfeasors, and if judgment is entered against Five Brothers, which it denies and continues to deny, then Five Brothers should not be found jointly and severally liable with Plaintiff and all other tortfeasors, but only liable for its percentage of fault, other than medical bills.

WHEREFORE, Defendant Five Brothers prays that judgment be entered in his favor and against the Plaintiff, and that costs be awarded.

### EIGHTH AFFIRMATIVE DEFENSE – LACK OF STANDING
### (As to All Remaining Claims Brought on Behalf of "B.M." by Nikki Parham)

The Defendant, Five Brothers, has denied and continues to deny any and all claims made by the Plaintiff, and deny that it is required to raise the following defense in the affirmative, but this defense is being raised in the alternative so as to prevent waiver.

1. Plaintiffs have filed a First Amended Complaint purporting to raise various claims in which a minor, identified as "B.M.," is the Plaintiff and/or claimant.

2. Upon Information and belief, Plaintiff Nikki Parham does not have standing to bring suit on the claims alleged to be owned by the minor child, pursuant to Rule 17 of the Federal Rule of Civil Procedure.

WHEREFORE, the Defendant, Five Brothers, Requests that Judgment be entered in its favor and that costs be awarded.

### NINTH AFFIRMATIVE DEFENSE – STATUTE OF LIMITATIONS

### (Directed to Both Plaintiffs as to Count VI – Intentional Infliction of Emotional Distress)

The Defendant, Five Brothers, has denied and continues to deny any and all claims made by the Plaintiff, and deny that it is required to raise the following defense in the affirmative, but this defense is being raised in the alternative so as to prevent waiver.

1.      Plaintiff's have filed a First Amended Complaint purporting to raise various claims including a claim for Intentional Infliction of Emotional Distress, an Illinois state law claim, which are alleged to have caused personal injuries, which are denied.

2.      As a claim for personal injuries, the applicable statute of limitations is two years. 735 ILCS 5/13-202.

3.      Plaintiff's Amended Complaint alleges that the incident, which is denied by Defendants, occurred on July 7, 2017.  However, Plaintiff did not file suit against Five Brothers until March 5, 2020.  Therefore, Plaintiff's First Amended Complaint was not filed within the applicable statute of limitations.

4.      Plaintiff's claim for Intentional Infliction of Emotional Distress should be barred.

WHEREFORE, the Defendant, Five Brothers, Requests that Judgment be entered in its favor and that costs be awarded.

## TENTH AFFIRMATIVE DEFENSE – STATUTE OF LIMITATIONS

### (Directed to Both Plaintiffs as to Count V – Intrusion Upon Seclusion)

The Defendant, Five Brothers, has denied and continues to deny any and all claims made by the Plaintiff, and deny that it is required to raise the following defense in the affirmative, but this defense is being raised in the alternative so as to prevent waiver.

1.      Plaintiff's have filed a First Amended Complaint purporting to raise various claims including a claim for Intrusion Upon Seclusion, an Illinois state law claim, which is alleged to have caused personal injuries, which is denied.

2.      Based upon Illinois limitations statute 735 ILCS 5/13-201, the applicable statute of limitations is one year.

3.      Plaintiff's Amended Complaint alleges that the incident, which is denied by Defendants, occurred on July 7, 2017.  However, Plaintiff did not file suit against Five Brothers until March 5, 2020.  Therefore, Plaintiff's First Amended Complaint was not filed within the applicable statute of limitations.

4.      Plaintiff's claim for Intrusion Upon Seclusion should be barred.

WHEREFORE, the Defendant, Five Brothers, Requests that Judgment be entered in its favor and that costs be awarded.

Respectfully Submitted,
**FIVE BROTHERS MORTGAGE COMPANY SERVICES and SECURING, INC.,**

By:_____
One of Its Attorneys

Lori A. Vanderlaan
Fritz V. Wilson
**Best, Vanderlaan & Harrington**
25 E. Washington St., # 800
Chicago, Illinois 60602
(312) 819-1100
Fax: (312) 819-8062
lvanderlaan@bestfirm.com
fwilson@bestfirm.com
eservice@bestfirm.com

## CERTIFICATE OF SERVICE

I, the undersigned, state that I caused copies of the foregoing to be served, with enclosures referred to therein, if any, by Operation of the Court's Electronic Filing System, to the Attorneys of Record at the Address(es) and/or facsimile number(s) of record, from 25 E. Washington St., Suite 800, Chicago, Illinois, prior to 5:00 p.m., on May 28, 2021.

Re:     Parham, et al. v. Masterbuilt Construction, Inc., et al.
        Case No.:     18-cv-04678
        BVH File No.:LIB.20198

## ATTORNEY SERVICE LIST

Mohammed Omar Badwan
Sulaiman Law Group, Ltd.
mbadwan@sulaimanlaw.com
2500 S. Highland Ave., Suite 200
Lombard, IL  60148
(630) 575-8181
Attorney for Plaintiff
Nikki Parham, individually and on behalf of her minor child, B.M.

Joseph Scott Davidson
Sulaiman Law Group, Ltd.
jdavidson@sulaimanlaw.com
2500 S. Highland Ave., Suite 200
Lombard, IL  60148
(630) 575-8181
Attorney for Plaintiff
Nikki Parham, individually and on behalf of her minor child, B.M.

Adam L. Saper
Carlos Ortiz
Hinshaw & Culbertson LLP
asaper@hinshawlaw.com
151 N. Franklin Street, Suite 2500
Chicago, IL  60606
(312) 704-3000
Attorney for Defendants
Lakeview Loan Servicing, LLC and Cenlar FSB

Adam Toosley
Fielden Fleming
Freeborn & Peters
atoosley@freeborn.com
311 S. Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6000
Attorney for Defendant
Masterbuilt Construction, Inc.